CARLOS M. DE CASTRO, peticionario y apelante, *v.* JUNTA DE COMISIONADOS DE SAN JUAN, querellada y apelada.

Núm. 8070. *Sometido:* Diciembre 9, 1941. *Resuelto:* Enero 14, 1942.

R. *Rivera Zayas, Gabriel de la Haba* y *Damián Monserrat, Jr.,* abogados del apelante; *F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El 11 de abril de 1939 el Dr. Carlos M. de Castro radicó una solicitud de *certiorari* en la Corte de Distrito de San Juan interesando que se revisara y anulara cierta resolución de la Junta de Comisionados de San Juan, del 5 del mismo mes y año, retroactiva al 7 de enero de 1939, por la cual fué destituído del cargo de Administrador de la Capital, para el cual fué nombrado por dicha junta el 4 de enero de 1937. Denegada la petición por sentencia de 21 de agosto

de 1939, recurrió el peticionario ante este tribunal, revocándose la sentencia apelada con fecha 28 de junio de 1940, y en su lugar dictándose otra cuya parte dispositiva en lo pertinente dice así:

" . . . y en su lugar se dicta otra anulando las Ordenanzas número 370 de enero 5, 1939, y número 373, de abril 5, 1939, que decretaron la suspensión y destitución del Administrador de la Capital, y se ordena la reposición del peticionario Carlos M. de Castro en su cargo de Administrador de la Capital, retroactiva dicha restitución al 5 de enero de 1939, fecha en que el peticionario fué suspendido.de empleo y sueldo." (57 D.P.R. 153.)

No conforme la Junta de Comisionados, apeló para ante la Corte de Circuito de Apelaciones de los Estados Unidos para el Primer Circuito, siendo confirmada la sentencia de este tribunal el 20 de octubre de 1941, denegándose por la Corte Suprema de los Estados Unidos la solicitud de certiorari que.para revisar la sentencia últimamente aludida radicó la Junta de Comisionados.

Devuelto el mandato a este tribunal, la Junta de Comisionados, con fecha 27 de octubre de 1941, radicó en esta corte una extensa moción, debidamente notificada a los abogados del peticionario apelante, interesando que dictemos una resolución decretando no haber lugar a ejecutar nuestra sentencia de 28 de junio de 1940, en tanto en cuanto ordena la reposición del peticionario Carlos M. de Castro en el cargo de Administrador de la Capital, por haber expirado desde el mes de enero (sic) de 1941 el término para el cual fué nombrado. Se opuso el peticionario por moción que radicó el 4 de noviembre último, quedando sometida la cuestión por la audiencia que al efecto se celebró el primero del mes pasado.

Oponiéndose a las pretensiones de la Junta de Comisionados, sostiene el peticionario Dr. De Castro que el cargo de Administrador de la Capital es vitalicio mientras observe -buena conducta; que las cuestiones planteadas por la junta apelada en relación con la duración del cargo de Administrador de la Capital fueron resueltas por este tribunal por

su sentencia de 28 de junio de 1940, que tiene carácter de firme y ejecutoria; y por último, que carecemos de jurisdicción para suspender la ejecución de una sentencia firme en lo que respecta a una cuestión que tiene la autoridad de cosa juzgada.

Contrario a lo que afirma la representación legal del peticionario Dr. De Castro, la sentencia de este tribunal de 28 de junio de 1940 no hizo pronunciamiento alguno ni se mencionó siquiera en la opinión la duración del término del cargo de Administrador de la Capital. No podía ser de otro modo, ya que esa cuestión no estuvo ni pudo estar en controversia, pues habiendo sido nombrado el Dr. De Castro el 4 de enero de 1937, al celebrarse la vista del certiorari por él interpuesto en la Corte de Distrito de San Juan, al pronunciar aquella corte su sentencia de 21 de agosto de 1939 y al dictarse la de este tribunal el 28 de junio de 1940, no había expirado el término de cuatro años para el cual, como sostiene la Junta de Comisionados, fué él nombrado. Lo único que se sustanció dentro de dicho procedimiento fueron los cargos formulados contra el peticionario y nada más. Por consiguiente, la cuestión que ahora nos ocupa no tiene la autoridad de cosa juzgada.

Ni en su escrito de oposición ni en el memorándum que posteriormente presentara el primero del mes pasado, aduce el peticionario razón legal alguna para sostener su tesis de que esta corte carece de jurisdicción para considerar y dirimir esta controversia.

La sentencia de cuya ejecución se trata fué pronunciada por este tribunal en lugar de la que dictó la Corte de Distrito de San Juan y la cuestión que ahora suscita la junta envuelve un incidente en relación con la ejecución de esa sentencia a la luz de hechos y circunstancias acaecidos con posterioridad a la fecha en que fué dictada. Entonces, como hemos visto, el término de cuatro años por el cual fué nombrado el peticionario, según afirma la junta, no había expirado, pero ahora, cuando se trata de ejecutarla, se alega que

el término ha vencido. Si en efecto resolviésemos que el término por el cual fué nombrado venció el año pasado, o para ser más precisos, el segundo lunes de febrero de 1941 (artículo 50 de la ley núm. 99 de 1931, enmendada por la núm. 10 de 1937, pág. 138), ¿no sería contrario a la ley y a la justicia que prevaliéndose de los términos de esa sentencia el peticionario se hiciese reponer en un cargo a que no tiene derecho? Para esa eventualidad, la ley, que no concibe un mal sin un remedio, confiere a este tribunal la facultad de concederlo, al prescribir en el artículo 7, inciso 8, del Código de Enjuiciamiento Civil, que toda corte tiene poder para controlar sus providencias y órdenes con el fin de ajustarlas a la ley y a la justicia. Véanse por analogía *McAuliffe v. Coughlin,* 105 Cal. 268; *Rowe v. Blake,* 112 Cal. 637, 643.

Resueltas las anteriores cuestiones, ha llegado el momento de discutir y resolver la relativa al término del cargo de Administrador de la Capital.

Aunque la Constitución Nacional no lo prohibe, los únicos cargos vitalicios en el gobierno federal son los de los jueces. La Constitución así lo dispuso para garantizar la independencia de la judicatura nacional. Los demás cargos federales en donde no existe esa necesidad, no gozan de ese privilegio. Así pues, el término vitalicio es la excepción y de ahí la regla de interpretación universalmente aceptada que prescribe que el término de un cargo no se entenderá vitalicio a menos que la intención de la legislatura a ese efecto resulte tan evidente que no admita duda. En caso de duda, se entenderá que el término del cargo será el más corto dentro de una razonable interpretación.

La contención del peticionario está predicada principalmente en el artículo 21 de la citada ley núm. 99 de 1931 (pág. 627), que literalmente dice así:

"Artículo 21.—El Administrador de la Capital será jefe ejecutivo de la misma, será nombrado por la Junta de Comisionados

que se crea por esta ley y *desempeñará su cargo mientras observe buena conducta.''* (Bastardillas nuestras.)

En el caso de *Shurtleff* v. *U. S.,* 189 U.S. 311, citado por la representación legal de la Junta de Comisionados, fué objeto de interpretación un estatuto federal cuyo artículo 12 decía así:

''Artículo 12.—El Presidente nombrará, con el consejo y consentimiento del Senado, nueve tasadores generales de mercancía, cada uno de los cuales recibirá un salario de $7,000 anuales. No más de cinco de dichos tasadores serán nombrados del mismo partido político. No podrán dedicarse a ningún otro trabajo y *podrán ser destituídos de su cargo en cualquier tiempo por el Presidente por ineficiencia, negligencia en el cumplimiento de sus deberes o mala conducta (malfeasance) en relación con su cargo.''*

Shurtleff había sido nombrado para uno de dichos cargos el 17 de julio de 1890 y continuó desempeñándolo hasta que el 3 de mayo de 1899, sin previa formulación de cargos, recibió una comunicación del Presidente McKinley destituyéndolo a partir de la fecha en que fuese nombrado y tomase posesión su sucesor. Sostenía Shurtleff que toda vez que el estatuto especificaba ciertas causas por las cuales el funcionario podía ser destituído, implícitamente excluía la facultad de destituirlo por cualquier otra causa que no fuese alguna de las especificadas en la ley, e invocó por vía de ilustración la máxima *expressio unius est exclusio alterius.*

La Corte Suprema de los Estados Unidos, sosteniendo la actuación del Presidente, se expresó así:

''Somos de opinión que la máxima no justifica la contención del apelante. La consideramos inaplicable a los hechos de este caso. El derecho de destitución siempre existiría aunque el estatuto guardase silencio sobre ello. Ese derecho existe no porque haya sido concedido, sino porque es inherente al derecho de nombrar, a menos que sea limitado por la Constitución o algún estatuto. Se requiere un lenguaje bien claro para privar de ese derecho. ¿Acaso el Congreso, por haber dispuesto que el funcionario podía ser destituído por ciertas causas, declaró que el derecho a destituir sólo podía ejercitarse por las causas especificadas? Si así fuese, ¡cómo se apartaría,

en lo que al término de este cargo respecta, de la regla prevaleciente en este país! El término del cargo de los funcionarios judiciales de los Estados Unidos está provisto por la Constitución, pero con la excepción ésa, ningún funcionario civil jamás ha sido nombrado por el término de su vida desde que se implantó el gobierno. Aún los jueces de las cortes territoriales pueden ser destituídos por el Presidente. (Citas). Interpretar el estatuto como pretende el apelante sería reconocer a un tasador de mercancías el derecho de retener su cargo durante su vida a menos que fuese declarado culpable de alguno de los actos especificados en el estatuto. Si esto fuere así, se crearía una completa revolución en el derecho a desempeñar un cargo y por inferencia, con respecto a éste en particular. Creemos que es imposible atribuir al Congreso la intención de efectuar un cambio tan extraordinario en la regla general que rige el término de los cargos públicos, cambio que se aplicaría solamente a este cargo, sin haberse manifestado tal intención en lenguaje claro y explícito, dando lugar a que la intención del Congreso tenga que ser deducida de inferencias dudosas. La regla expresada en la máxima es correcta y está basada en razonamientos que en muchas ocasiones la justifican, pero no debe dársele una fuerza decisiva cuando el así hacerlo acarrearía la alteración de la práctica universal de gobierno establecida por más de un siglo y la consiguiente disminución de los poderes del ejecutivo de una manera inusitada.''

Más adelante, en el curso de su opinión, repite el tribunal:

''No podemos aceptar la idea de que el Congreso en algún momento intentase este resultado, no habiendo usado un lenguaje que expresase esa intención fuera de duda.''

Si interpretamos el artículo 21, supra, en relación con los demás preceptos de la ley, especialmente con el artículo 39, como aconseja la hermenéutica legal, crece de punto la duda respecto a la intención del legislador. En lo pertinente, dicho precepto legal dice así:

''Artículo 39.—Todos los nombramientos de empleados serán hechos por los respectivos funcionarios, según el departamento de la Capital bajo cuya dirección desempeñaren sus funciones; *estos empleados serán nombrados por el término del nombramiento de cada funcionario.* Los empleados de la Capital podrán ser destituídos por justa causa por el funcionario que los nombrare, previa audiencia y oportunidad de defenderse . . .''

Si sostuviésemos que el cargo de Administrador de la Capital es vitalicio, entonces nos encontraríamos con las siguientes anomalías:

(1) El Tesorero de la Capital, el Director de Obras Públicas, el Director de Sanidad y Beneficencia, el Director Escolar y el Secretario de la Capital, que según el artículo 26 deberán ser nombrados por el Administrador de la Capital, podrían ser nombrados por un término limitado que designe el administrador, mientras que los empleados de la oficina del Administrador de la Capital, digamos, por ejemplo, el mensajero de su oficina, por el hecho de ser nombrado por el administrador, desempeñaría su empleo durante su vida a menos que fuese destituído por justa causa.

No pudo ser la intención del legislador establecer una diferencia tan absurda entre el término del cargo de un empleado (*employee*) y funcionarios (*officers*) tan importantes como los enumerados en el artículo 26, supra.

(2) Se crearía un injustificado discrimen entre los empleados nombrados por los funcionarios del Gobierno de la Capital y los empleados nombrados por el administrador, ya que los primeros serían nombrados por el término del cargo del funcionario nominador, mientras que el término de los empleados nombrados por el administrador sería vitalicio.

En el caso de *Smith* v. *Bryan*, 40 S.E. 652, 654, se dijo por la Corte Suprema de Apelaciones de Virginia:

"Es una regla de hermenéutica legal que cuando un estatuto es de dudosa interpretación, la corte considerará la que se le hubiere dado cuando empezó a regir y esa interpretación no variada ya por la legislatura o por decisiones judiciales, será considerada como la correcta. Suth. St. Const., párrafo 307; *Anable* v. *Com.*, 24 Grat. 563–566; *Lewis* v. *Whittle,* 77 Va. 415, 422; *Mangus* v. *McClelland,* 93 Va. 786, 789, 22 S. E. 364.

"Así pues, la interpretación que en la práctica se haya dado a un estatuto por los funcionarios públicos y por el público en general, no solamente debe ser tenida en cuenta, sino que en casos de duda se considerará como decisiva. Se le concede el mismo efecto que a una serie de decisiones judiciales. Se presume que la legislatura está

enterada de dicha interpretación, y cuando ha sido continuada por algún tiempo, en ausencia de legislación que demuestre que ha sido descartada, las cortes la adoptarán.

" *        *        *        *        *        *        *

"El apelante aceptó su nombramiento presuntivamente con conocimiento de las limitaciones puestas al término de su cargo por la interpretación antes mencionada. Por lo tanto, tomó posesión sujeto a esa interpretación y no puede ahora insistir en otra distinta."

A nuestro juicio, no es cuestión fuera de duda que haya sido la intención legislativa que el cargo de administrador sea vitalicio, y ante la duda, procede, de acuerdo con la jurisprudencia, optar por el término más corto, el de cuatro años, que es el de la mayoría, por lo menos, de la Junta de Comisionados que lo nombró.

A este efecto dice un conocido autor:

"Cuando el precepto legal que define el término es incierto o dudoso, se adoptará aquella interpretación que lo limita al tiempo más breve." McQuillin *Municipal Corporations*, 2a. ed., 1939, Vol. 2, pág. 219.

Véanse al mismo efecto la monografía en 135 A.L.R. 1173, 1175, y los casos de *Aggeler* v. *Domínguez*, (1933), 217 Cal. 429, 19 P. (2) 241; *Lowrie* v. *Brennan*, (1937), 283 Mich. 63, 276 N.W. 900; *Chamski* v. *Cowan*, (1939), 288 Mich. 238, 284 N.W. 711; *Dobkins* v. *Reece*, (1929, Tex. Civ. App.), 17 S.W. (2) 81.

Los partidos políticos de esta Isla siempre han interpretado esta ley en el sentido de que el término del cargo de Administrador de la Capital es de cuatro años, y desde que se enmendó su artículo 50 en 1937, es el segundo lunes de febrero del año siguiente a cada elección general cuando lo nombra la Junta de Comisionados. [4] Las cortes toman conocimiento judicial de lo que es de conocimiento general, y es de conocimiento general por lo menos entre los habitantes de esta ciudad y especialmente entre los electores, quiénes han sido los candidatos de los distintos partidos políticos

para el cargo de Administrador de la Capital en las dos últimas elecciones generales. Véanse, en lo que respecta a conocimiento judicial, 9 Wigmore *on Evidence* (3a. ed., 1940), sección 2571, pág. 548; *City of Birmingham* v. *Martin*, 153 So. 235; *Byrne* v. *Scipio et al.*, (N. J., 1937), 192 Atl. 444. Así pues, tomamos conocimiento judicial de que el peticionario fué candidato para Administrador de la Capital por la Coalición de los Partidos Unión Republicana y Socialista en las elecciones generales celebradas en 1936, siendo su contrincante entonces por el Partido Liberal Puertorriqueño el Dr. M. Pavía Fernández. Asimismo es de conocimiento público en esta ciudad que en las elecciones generales celebradas en 1940, el candidato de la Coalición de los Partidos Unión Republicana y Socialista para el mismo cargo fué el Sr. Fernando Géigel; por el Partido Popular Democrático el Sr. F. Benítez Rexach y por el Partido Unificación Puertorriqueña Tripartita, el Sr. R. Ramos Cobián, y que habiendo triunfado el primero de dichos partidos en las elecciones últimamente celebradas, la Junta de Comisionados nombró al Sr. Géigel Administrador de la Capital.

Es verdad, como arguye el peticionario, que el cargo de Administrador de la Capital no aparece en la papeleta electoral correspondiente a la Capital de Puerto Rico. Tampoco aparece la candidatura del Presidente de los Estados Unidos en la papeleta electoral en las elecciones generales y sin embargo es sabido que el candidato nominado en la convención del partido que resulte triunfante en las elecciones generales será el Presidente de los Estados Unidos.

No estará de más consignar aquí y de ello hemos tomado conocimiento judicial, que el peticionario, en las últimas elecciones generales, fué candidato a Representante a la Cámara por el precinto de Santurce por el Partido Unificación Puertorriqueña Tripartita y esto tuvo lugar varios meses después de haberse dictado a su favor la sentencia de este Tribunal por la cual se ordenaba la reposición del peticionario en el cargo de Administrador de la Capital. Esta actitud del peti-

cionario está en armonía con la interpretación a que venimos haciendo referencia y tiende a demostrar su convicción de que no podría continuar ocupando el cargo de Administrador de la Capital una vez vencido el término de cuatro años que habría de expirar el segundo lunes de febrero de 1941.

Si esa ha sido la interpretación que a dicha ley han dado los distintos partidos políticos, el público en general y el propio peticionario, parece claro que por lo menos es muy dudosa la interpretación propuesta por el peticionario, y que siéndolo, debemos resolver que el término del Administrador de la Capital es el de cuatro años, siempre que durante el mismo observe buena conducta.

Tanto la junta como el apelante citan distintos casos en apoyo de sus respectivas contenciones, los cuales no nos proponemos discutir para no extender innecesariamente esta opinión. Sin embargo, los hemos examinado y ninguno de ellos es de entera aplicación al de autos, pues unos y otros interpretan estatutos que aunque semejantes no son iguales al que nos ocupa, y es sabido que una ligera discrepancia entre dos estatutos produce a menudo interpretaciones diametralmente opuestas. ▮ Por eso en este caso hemos seguido lo que creemos la mejor práctica al interpretar un estatuto, o sea, sin menospreciar la interpretación que se haya dado a otros similares, estudiarlo cuidadosamente en sus distintos artículos, armonizándolos unos con otros para de ese modo desentrañar de todo su contexto cuál ha sido el propósito del legislador.

Por las razones expuestas, *procede declarar con lugar la moción de la Junta de Comisionados de San Juan, radicada el 27 de octubre de 1941, y en su consecuencia decretar que no ha lugar a ejecutar la sentencia de este tribunal de 28 de junio de 1940 en tanto en cuanto se ordena por ella la reposición del peticionario Dr. Carlos M. de Castro en el cargo de Administrador de la Capital por haber expirado en febrero de 1941 el término para el cual fué nombrado.*

El Juez Asociado Sr. Todd, Jr., no intervino.