SOL LUIS DESCARTES, TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; SUCN. DE GENARO CAUTIÑO INSUA, interventora.

Núm. 228.  *Sometido:* Enero 19, 1950.  *Resuelto:* Abril 24, 1950.

*Hon. Procurador General Vicente Géigel Polanco* y *José A. García Malpica, Procurador General Auxiliar,* abogados del peticionario; *Diego Guerrero Noble,* abogado de la interventora, querellante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Genaro Cautiño Insua, causante de la sucesión interventora, allá para los años 1940, 1941, 1942, 1943 y 1944 era socio y controlaba más del 50 por ciento del capital de la sociedad Sucrs. de José González & Co., S. en C. Practicada una investigación de los libros de contabilidad de ésta, el Tesorero de Puerto Rico, como resultado de la misma, notificó a la sociedad ciertas deficiencias resultantes de ingresos dejados de informar y de deducciones no permitidas por la ley. La sociedad aceptó como su ingreso neto tributable el determinado por el Tesorero y pagó la contribución correspondiente a dicha determinación. El Tesorero entonces notificó deficiencias a Cautiño Insua([1]) y al no estar éste conforme con las mismas y luego de acogerse al procedimiento administrativo de rigor, acudió al Tribunal de Contribuciones, donde después de celebrarse una vista en los méritos se declaró con lugar la querella en todos sus extremos. A petición del Tesorero expedimos el auto de *certorari* autorizado por la sección 5 de la Ley núm. 169 de 15 de mayo de 1943 (págs. 601, 609).([2])

██ Alega ahora el peticionario que fué un error del tribunal recurrido decidir que de conformidad con lo provisto

---

([1]) Para los años 1940, 1941, 1943 y 1944 sus ingresos, según el Tesorero, fueron mayores que los informados en sus respectivas planillas. Durante el año 1942, sin embargo, su participación, según dicho funcionario, en los beneficios de la sociedad fué menor. No obstante, conforme indica la interventora en su alegato, para ser consistente con su teoría, su querella comprendía los cinco años contributivos.

([2]) Véase también el artículo 6 de la Ley núm. 328 de 13 de mayo de 1949 (págs. 997, 1005).

por las secciones 4(a) ([3]) y 15([4]) de la Ley de Contribuciones Sobre Ingresos (núm. 74 de 6 de agosto de 1925, pág. 401), los beneficios determinados por una sociedad pero no recibidos por los socios no están sujetos al pago de contribución sobre ingresos. La cuestión así planteada fué resuelta por este Tribunal adversamente al contribuyente en el caso de *Tes.* v. *Tribl. Contribuciones y Ballester*, 69 D.P.R. 750 y 70 D.P.R. 386, confirmado por la Corte de Apelaciones de los Estados Unidos para el Primer Circuito en *Ballester Ripoll* v. *Descartes*, 181 F.2d 823.

En la opinión que emitimos en ese caso dijimos a la página 389 que ". . . basta que surja el derecho a participar en los beneficios para que el socio esté obligado a pagar contribución de ingresos sobre los mismos," y que "su derecho a participación en los beneficios impone al socio la obligación de pagar el tributo."

■■ También sostiene el peticionario que el Tribunal de Contribuciones erró al "resolver que el Tesorero incluyó como parte del ingreso tributable de un socio un beneficio que no fué reconocido como tal por la sociedad, cuando la evidencia ofrecida al tribunal demuestra lo contrario." Ni de la petición por él radicada ni de su alegato se desprende con la claridad deseada a qué beneficio se refiere. Al discutir la cuestión legal de si los beneficios no distribuídos de una socie-

---

([3]) La sección 4(a), según fué enmendada por la Ley núm. 31 de 12 de abril de 1941, pág. 479, en lo pertinente reza así:

". . . Y *el término 'beneficio' significará cualquier participación o derecho a participación en una sociedad* que en los 'beneficios' o utilidades de cualquier sociedad correspondiere a sus socios o partícipes en cada año contributivo." (Bastardillas nuestras.)

([4]) La sección 15, según fué enmendada por la Ley núm. 31, supra, en lo pertinente provee:

"(a) *El término 'ingreso bruto' incluye* ganancias, beneficios, beneficios o ingresos derivados de sueldos, jornales, o compensación por servicios personales . . . de cualquier clase y cualquiera que sea la forma en que se pagare, o de profesiones, oficios, industrias, negocios, comercio, o ventas; . . . también de intereses, rentas, dividendos, *beneficios de sociedades*, valores o de la operación de cualquier negocio explotado con fines de provecho o utilidad, o de ganancias, utilidades e ingresos derivados de cualquier procedencia; . . ." (Bastardillas nuestras.)

dad son tributables o no a los socios, el tribunal recurrido dijo en el curso de su opinión que "La situación resulta ser todavía más clara en el caso de autos, en el cual el querellado pretende incluir como parte del ingreso tributable de un socio un beneficio que no ha sido ni siquiera reconocido como tal por la sociedad, y el cual con mayor razón, no ha estado, ni puede estar, a disposición del socio." Tampoco se desprende de esa opinión a qué beneficio se refería el tribunal a quo. Inferimos, sin embargo, por la discusión general que de este error se hace por las partes, que tanto el Tribunal de Contribuciones como el peticionario han querido referirse a las sumas pagadas por la sociedad para la amortización del capital de los bonos del Sistema de Riego de Guayama.

Conforme sostiene la interventora, una cosa es el ingreso neto tributable y otra cosa es el ingreso neto distribuíble. De ello no hay la menor duda, ya que hay partidas, como por ejemplo las de contribuciones sobre ingresos y donativos [5] que, por no ser deducibles a los fines de la contribución sobre ingresos, forman parte del ingreso neto tributable de la sociedad y, no obstante ello, no forman parte de los ingresos distribuíbles de la misma. Sea ello como fuere, debemos aclarar que no se trata aquí de una contribución por concepto de riego sino de una amortización de bonos. [6] Siendo ello así, para fines de la contribución sobre ingresos las partidas correspondientes a esos pagos no solamente no eran deducibles de los

---

[5] A partir del 1ro. de enero de 1944 los donativos hechos dentro del año contributivo por una corporación o sociedad son deducibles de su ingreso neto. Véase el artículo 1(c) de la Ley núm. 60 de 5 de mayo de 1944 (pág. 125). Hasta entonces, tales donativos no eran deducibles del ingreso neto de la corporación o sociedad.

[6] Aunque en sus notificaciones a la sociedad para todos y cada uno de los años aquí en controversia, el Tesorero hizo constar que se trataba de contribución de riego, las partes estipularon más tarde que tales partidas correspondían "al por ciento que el Tesorero determinó que representa la amortización del capital de los bonos del Sistema de Riego de Guayama." Esto, naturalmente, hizo variar la situación y la sociedad misma admitió que no tratándose del pago de una contribución sino de la amortización del capital de bonos, esas partidas no eran deducibles de acuerdo con la sección 32(a) (3) (c) de la Ley de Contribuciones sobre Ingresos.

ingresos brutos de la sociedad sino que una vez pagadas redundaban en beneficio de la sociedad y, por ende, de los socios. En su consecuencia, el causante de la interventora se benefició con tales pagos y la participación correspondiente era tributable como un beneficio por él percibido.

La única otra cuestión suscitada por el peticionario es que el Tribunal de Contribuciones erró al resolver que las secciones 16(a)(2) y 32 (a)(2) no prohiben a un socio que controla o posee más del 50 por ciento del capital social de una sociedad, deducir de su ingreso bruto los intereses pagados por él a la misma.

La sección 16 se refiere a las *deducciones admitidas a individuos* y en su inciso (a)(2) provee en lo pertinente que:

"(a) Al computar el ingreso neto se admitirán como deducciones:

".. ... ... ... ... ... ... ... ... ... ... ... ...

"(2) Todos los intereses pagados o vencidos dentro del año contributivo sobre deudas, . . . *Disponiéndose,* que no son deducibles intereses algunos, si son pagaderos entre miembros de una familia o entre un individuo o una corporación con respecto a la cual el individuo sea dueño directa o indirectamente de más del cincuenta (50) por ciento del valor de las acciones emitidas (*outstanding stock*) o (*c*) entre corporaciones con respecto a las cuales un mismo individuo o corporaciones y el dueño o dueña directa o indirectamente de más del cincuenta (50) por ciento de las acciones emitidas (*outstanding stock*) de cada una de dichas corporaciones," etc.

Si nos atuviéramos única y exclusivamente a la aplicación e interpretación del inciso antes copiado, probablemente tendríamos que llegar a la conclusión de que los intereses pagados por un socio a la sociedad a que pertenece, no obstante poseer el socio más del 50 por ciento del capital social de ésta, serían deducibles a los fines de la contribución sobre ingresos, ya que ese artículo prohibe la deducción de intereses por un individuo que sea dueño directa o indirectamente de más del 50 por ciento del valor de las acciones emitidas por una corporación, y no se refiere en forma alguna a un socio

que controla más del 50 por ciento del capital social de una sociedad. Pero las leyes no han de ser interpretadas tomando aisladamente algunas de sus secciones, párrafos u oraciones, sino que deben serlo tomando en consideración todo su contexto. *General Motors Acceptance Corp.* v. *Tribunal de Distrito,* 70 D.P.R. 941 y *Pueblo* v. *Mantilla,* ante pág. 36; *Tesorero* v. *Tribl. Contribuciones y Ballester,* supra; *Orta* v. *Registrador,* 60 D.P.R. 789, 793; *De Castro* v. *Junta Comisionados,* 59 D.P.R. 676, 686; *United States* v. *Alpers,* 338 U.S. 680; *Helvering* v. *Morgan's, Inc.,* 293 U.S. 121–131, 79 L. Ed. 232; *Hellmich* v. *Hellman,* 276 U.S. 233, 72 L. Ed. 544; *Larkin* v. *United States,* 78 F.2d 951; Sutherland, *Statutory Construction,* 3rd Ed., Vol. 2, pág. 338, sec. 4704; Crawford, *Statutory Construction,* pág. 258, sec. 165; Merten's, *Law of Federal Income Taxation,* pág. 75, sec. 3.13. Artículos 17 y 18 del Código Civil, edición 1930.

Así, pues, al estudiar y resolver la cuestión que está ante nuestra consideración no debemos limitarnos al alcance de la referida sección 16 (*a*) (2), sino que es menester tomar la Ley de Contribuciones Sobre Ingresos en su totalidad para ver si a virtud de ella un socio que posee más del 50 por ciento del capital social puede deducir o no los intereses que pague a la sociedad. La sección 32 de la referida Ley, que trata de las deducciones admitidas a corporaciones y sociedades, provee en el *Disponiéndose* del inciso (*a*) (2) que *"no son deducibles los intereses pagaderos entre un individuo y una corporación o sociedad ni los intereses pagaderos entre una corporación o sociedad y un individuo, cuando el individuo posee o controla directa o indirectamente o a través de su familia más del cincuenta (50) por ciento del valor de las acciones emitidas (outstanding stock) por la corporación o más del cincuenta (50) por ciento del capital social, . . ."* Bajo ese inciso resulta enteramente claro, no obstante referirse el título del mismo a las deducciones admitidas a las corporaciones y sociedades y no a las deducciones admitidas

a los individuos, que, como ocurre en este caso, cuando un individuo personalmente o a través de su familia, posee o controla más del 50 por ciento del capital social, los intereses pagados por ese individuo a la sociedad no son deducibles de su contribución sobre ingresos. Naturalmente, el hecho de que la ley hable de *intereses pagaderos* y no de intereses pagados, no tiene importancia alguna. Véase *Buscaglia, Tes.* v. *Tribunal Contribuciones, Rullán, Interventor,* 67 D.P.R. 585, confirmado en *Rullán* v. *Buscaglia,* 168 F.2d 401. Habiendo aceptado las partes que el causante de la interventora poseía para los años en disputa más del 50 por ciento del capital social de la sociedad Sucrs. de José González & Co., S. en C.,(7) resulta incuestionable, a virtud del artículo 32(*a*)(2) supra, que los intereses por él pagados a la sociedad de que era miembro no eran deducibles de su contribución sobre ingresos. Las deducciones son una gracia legislativa y deben interpretarse restrictivamente en contra de la persona que alega tener derecho a ellas. *Buscaglia, Tes.* v. *Tribl. de Contribuciones, Rullán, Interventor,* supra, y casos en él citados; Merten's, op. cit., pág. 69, sec. 3.08.

■ Al discutir los errores señalados por el peticionario, la interventora alega que las enmiendas introducidas a la Ley de Contribuciones Sobre Ingresos por la Ley núm. 31 de 12 de abril de 1941, pág. 479, no son de aplicación al año contributivo de 1940. Está equivocada. Por disposición expresa de su sección 29 dicha ley enmendatoria empezó a regir el día 1ro. de enero de 1940. Cf. *Ballester* v. *Tribunal, etc.,* 61 D.P.R. 474.

*Debe revocarse la resolución recurrida y devolverse el recurso al tribunal inferior para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Negrón Fernández de inhibió.

---

(7) En el párrafo séptimo de la estipulación suscrita por las partes en 7 de junio de 1948 se acepta por ellas que Cautiño Insua controlaba más del 50 por ciento del capital social de la sociedad Sucrs. de José González & Co., S. en C., durante todos y cada uno de los años envueltos en el litigio.

EN MOCIÓN DE RECONSIDERACIÓN.
Junio 22, 1950.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

En la opinión emitida por nosotros en este caso con fecha 24 de abril de 1950 nos expresamos así:

"También sostiene el peticionario que el Tribunal de Contribuciones erró al 'resolver que el Tesorero incluyó como parte del ingreso tributable de un socio un beneficio que no fué reconocido como tal por la sociedad, cuando la evidencia ofrecida al tribunal demuestra lo contrario.' Ni de la petición por él radicada ni de su alegato se desprende con la claridad deseada a qué beneficio se refiere. Al discutir la cuestión legal de si los beneficios no distribuídos de una sociedad son tributables o no a los socios, el tribunal recurrido dijo en el curso de su opinión que 'La situación resulta ser todavía más clara en el caso de autos, en el cual el querellado pretende incluir como parte del ingreso tributable de un socio un beneficio que no ha sido ni siquiera reconocido como tal por la sociedad, y el cual con mayor razón, no ha estado, ni puede estar, a disposición del socio.' Tampoco se desprende de esa opinión a qué beneficio se refería el tribunal a quo. Inferimos, sin embargo, por la discusión general que de este error se hace por las partes, que tanto el Tribunal de Contribuciones como el peticionario han querido referirse a las sumas pagadas por la sociedad para la amortización del capital de los bonos del Sistema de Riego de Guayama."

Y llegamos a la conclusión de que "el causante de la interventora se benefició con tales pagos y la participación correspondiente era tributable como un beneficio por él percibido."

Nos dice ahora la interventora en su moción de reconsideración que "las partidas denominadas en la estipulación 'contribución riego' únicamente representan aquella parte de la contribución que pagó la sociedad por el servicio de riego que fué fijada por el Gobierno Insular para amortizar su deuda representada por bonos emitidos." Aclarada así la situación, la cuestión a ser determinada es si las cantidades pagadas por la sociedad Sucrs. de José González & Co., S. en C., de que el causante de la sucesión interventora formaba parte, al Pueblo de Puerto Rico por concepto de contribución de riego para la amortización de los bonos del Sistema del Riego de Guayama eran deducibles de los ingresos brutos de la sociedad y, de no serlo, si dicho causante venía o no obligado a pagar contribución sobre ingresos en relación con la parte proporcional que como socio de tal sociedad a él correspondía en las cantidades por ella pagadas por semejante concepto. El Tesorero de Puerto Rico sostiene que esas cantidades constituyen erogaciones capitalizables, no deducibles por la sociedad, y que los socios estaban, en su consecuencia, obligados a pagar contribución sobre ingresos por su participación en esas erogaciones.

Por la Ley de 29 de febrero de 1908 (pág. 134) se autorizó al Comisionado del Interior para que continuara el estudio de los diferentes proyectos de regadío de las llanuras de Arroyo, Guayama y Salinas. Por la de septiembre 18 de 1908 (Ses. Ext., pág. 73) se autorizó la emisión de bonos del Gobierno Insular de Puerto Rico en cantidad que no excediera de tres millones de dólares para la construcción de un sistema de riego en Puerto Rico, para el distrito comprendido aproximadamente entre el río de Patillas por el Este y el río Portugués por el Oeste, disponiéndose en su sección 8 que "se dedicarán al pago de intereses y principal de dichos bonos las rentas que se deriven de *las contribuciones que se impongan,*

en los años económicos respectivos, durante el período de amortización de dichos bonos, sobre la propiedad incluída en el distrito de riego, . . .''; y en la sección 11 que ". . . *el título legal de todo lo perteneciente al sistema de riego, continuará siendo de El Pueblo de Puerto Rico pero lo será en carácter de fideicomiso, para el beneficio de los dueños de terrenos, a los cuales se impone por la ley el gravamen de pagar por los beneficios que se les confieren con dicho sistema de riego, y de los sucesores en la posesión del título de dichos terrenos, siendo el objeto y fin de esta disposición que El Pueblo de Puerto Rico esté garantizado en todo tiempo mientras su crédito estuviere así empeñado, hasta la fecha de la extinción de toda responsabilidad, según se ha expresado.*'' (Bastardillas nuestras) ; y en la sección 11 de la Ley 128 de 8 de agosto de 1913 (págs. 53, 68) se especifica la forma en que el Tesorero de Puerto Rico calculará el importe de los intereses y del capital o fondo de amortización que se adeudare sobre bonos de riego y la manera en que las personas o entidades beneficiadas por el sistema han de hacer sus contribuciones.[1]

De acuerdo con la sección 32 de la Ley de Contribuciones sobre Ingresos [2] "(a) al computar el ingreso neto de una... sociedad sujeta a la contribución impuesta por la sección 28, se admitirán como deducciones: . . . (3) las contribuciones pagadas o acumuladas dentro del año contributivo *a excepción: . . . (c) de contribuciones impuestas sobre beneficios locales de naturaleza tal que tiendan a aumentar el valor de la propiedad tasada.*'' (Bastardillas nuestras.) En el artículo 114 del Reglamento núm. 1 promulgado para la implementación de la citada Ley 74 de 1925, se dice que: (Traducción nuestra.)

"Una contribución se considerará como impuesta sobre beneficios locales cuando la propiedad sujeta a la contribución está limitada a la propiedad beneficiada . . . . Las contribuciones

[1] Véase también la Ley 43 de 12 de mayo de 1934 (pág. 343).

[2] Núm. 74 de 6 de agosto de 1925 (pág. 401).

impuestas bajo los estatutos de California relativos a regadío, de Iowa relativos a drenaje y bajo ciertos estatutos de Tennessee relativos a diques, están limitadas a la propiedad beneficiada, y cuando se desprende con claridad que tales contribuciones (*assessments*) están así limitadas, las cantidades pagadas bajo las mismas no son deducibles como contribuciones. . . . *Cuando las contribuciones se imponen con el objeto de construir beneficios locales, los pagos efectuados por el contribuyente participan de la naturaleza de erogaciones capitalizables y no son deducibles. . . .*" (Bastardillas nuestras.)

En el presente caso las sumas envueltas para los años en cuestión comprenden tan sólo las cantidades pagadas por la sociedad para la amortización de los bonos emitidos por El Pueblo para el sistema de regadío del distrito en que están situadas las propiedades de dicha sociedad. No está envuelta, por tanto, cuestión alguna relativa al pago de intereses sobre los bonos, al sostenimiento del sistema de regadío, ni a las reparaciones de éste.

En el caso de *Andrew Little* v. *Commissioner*, 21 B.T.A. 911 (1930), el recurrente era dueño de cierto inmueble situado dentro de un distrito de regadío en el estado de Idaho. Bajo las leyes de ese estado un distrito de regadío es una autoridad debidamente facultada para imponer y cobrar contribuciones sobre los beneficios locales percibidos por la propiedad tasada que se hallare dentro de sus límites. La Junta de Apelaciones de Contribuciones de los Estados Unidos *(U.S. Board of Tax Appeals)* dijo que es cuestión bien establecida que tales contribuciones pueden ser impuestas debido a los beneficios especiales derivados de un uso público; que la imposición es una contribución, ora el ingreso se utilice por el distrito para la amortización del capital de sus obligaciones o para el pago de los intereses de los bonos emitidos; y que los beneficios locales de un distrito de regadío difieren materialmente de los beneficios locales percibidos con el trazado y pavimentación de calles, aceras, etc., ya que estos últimos se usan por el público en general, mientras que aquéllos son estrictamente para benecio y uso de los terratenientes dentro

del distrito y constituyen un factor importante en la producción de los ingresos de tales terratenientes; que la construcción del sistema de regadío como cuestión de hecho aumenta el valor de los terrenos regados y en muchas ocasiones transforma terrenos estériles en valiosas tierras agrícolas y de pastos; que el costo de construir o de adquirir tal sistema por un distrito de regadío recae enteramente sobre los terratenientes dentro del distrito y que *no hay duda de que tal costo participa de la naturaleza de una erogación capitalizable*, citando el caso de *Champion Coated Paper Co.* v. *Commissioner*, 10 B.T.A. 433; el artículo 214 (*a*) (3) (*c*) de la Ley federal de Rentas Internas de 1921 y el artículo 133 del Reglamento 62, que son idénticos al artículo 32 (*a*) (3) (*c*) de nuestra ley de 1925 y al artículo 114 de nuestro reglamento citado, respectivamente. En el caso de *F. A. Smith et al.* v. *Commissioner*, 11 B.T.A. 301 (1928), se llegó a la misma conclusión.

En *Harwell* v. *Commissioner*, 170 F.2d 517, 519 (1948), la Corte de Apelaciones para el Décimo Circuito de los Estados Unidos tuvo también ante su consideración una cuestión similar y resolvió que las contribuciones impuestas para la amortización de los bonos emitidos para la construcción de diques (*levees*) lo fueron para el pago de mejoras al terreno y debieron ser agregadas a la contribución básica, pero que las contribuciones impuestas para el pago de intereses sobre bonos eran deducibles, citando los casos de la Junta de Apelaciones de Contribuciones de los Estados Unidos que ya hemos reseñado.

En *Lee Wilson & Co.* v. *Commissioner*, 25 B.T.A. 840 (1932), la Junta de Apelaciones de Contribuciones de los Estados Unidos también tuvo ante su consideración una cuestión similar a la que nos ocupa en relación con contribuciones impuestas por ciertos distritos de drenaje, caminos y diques que atravesaban las fincas del recurrente. Dicha Junta citó la sección 234 (*a*) (3) de la Ley federal de Rentas Internas de 1921 y 1924 que estaba redactada en forma idéntica a como

reza.la sección 32 (a) (3) (c) de nuestra Ley de Contribuciones sobre Ingresos, al igual que los artículos 133 y 561 de los Reglamentos núms. 62 y 65 del Comisionado, que asimismo estaban concebidos en forma idéntica a como reza el artículo 114 del nuestro ya citado. En el curso de su opinión se expresó así:

"*No se ha suscitado cuestión alguna respecto al hecho de que las cantidades pagadas por el peticionario a esos distritos constituían contribuciones debidamente impuestas y cobradas por los varios distritos, en armonía con los estatutos de Arkansas.* La única cuestión que está ahora ante nos es si aquella parte de esas contribuciones utilizada para el pago de intereses, sostenimiento, reparaciones y gastos, es deducible a los fines de determinar los ingresos netos de la peticionaria. . . . Somos de opinión que aquella parte de las contribuciones pagada por la peticionaria para sostenimiento, reparaciones y gastos para cada uno de los años (en cuestión) es deducible." (Bastardillas nuestras.)

En relación con la cuestión que aquí discutimos, véanse también *Chapman & Dewey Lumber Co.* v. *Commissioner*, 25 B.T.A. 1166 (1932), así como *Missouri State Life Insurance Co.* v. *Commissioner*, 29 B.T.A. 401, 414 (1933).

A la luz de la sección 32 (a) (3) (c) de la Ley de Contribuciones sobre Ingresos, del artículo 114 del Reglamento núm. 1 y de los casos antes citados, es incuestionable que las cantidades pagadas por la sociedad fueron "contribuciones impuestas sobre beneficios locales de tal naturaleza que tendieron a aumentar el valor de la propiedad tasada"; y que, en su consecuencia, las mismas constituían erogaciones capitalizables.[3] Siendo erogaciones de esa naturaleza, las partidas así pagadas no eran deducibles del ingreso bruto de la sociedad, constituyeron ingresos para ésta, y a tenor de lo resuelto en el caso de *Tesorero* v. *Tribunal Contribuciones y Ballester*, 69 D.P.R. 750 y 70 D.P.R. 386, representaban beneficios no

---

[3] Aunque la sociedad aceptó que la partida de "Contribución Riego" no era deducible de su ingreso bruto, hemos discutido la cuestión con amplitud para determinar si el socio venía o no obligado a pagar contribución sobre ingresos sobre su participación en la cantidad así pagada por la sociedad.

distribuídos para el causante de la sucesión interventora. Por tales beneficios él venía obligado a pagar contribución sobre ingresos.

Las demás cuestiones suscitadas en la moción de reconsideración no requieren ulterior consideración.

*Debe declararse no haber lugar a la reconsideración solicitada.*

El Juez Asociado Sr. Negrón Fernández se inhibió.