948

Clemente Pereda, peticionario y apelante, v. José Padín, Félix· Córdova Dávila, Clemente Ruiz Nazario, Francisco Parra Toro, Felipe Carro, Jaime Annexy, Rafael Martínez Nadal, Francisco Capó y Rafael Menéndez Ramos, en su carácter de miembros de la Junta de Síndicos de la Corporación "La Universidad de Puerto Rico", demandados y apelados.

No. 6884.—*Sometido:* Mayo 6, 1936.  *Resuelto:* Mayo 21, 1936.

*Gilberto Concepción de Gracia, A. Casanova Prats, L. Vergne Cortés, C. Santana Becerra y J. Paniagua Serracante,* abogados del apelante; *C. Ruiz Nazario,* abogado del apelado Sr. Padín; *Hon. Procurador General B. Fernández García y T. Torres Pérez, subprocurador,* abogados de los apelados.

El Juez Asociado Señor Travieso, emitió la opinión del tribunal.

El peticionario y apelante en este caso radicó ante la Corte de Distrito de San Juan una petición para que por dicha corte se librara un auto de *mandamus,* ordenando a la Junta de Síndicos de la Universidad de Puerto Rico la reposición del peticionario en su empleo como Profesor Auxiliar de Pedagogía, del que alegaba haber sido separado ilegalmente.

Alega el peticionario que con fecha 25 de mayo de 1934 la Junta de Síndicos contrató sus servicios como Profesor Auxiliar de Pedagogía en la Universidad de Puerto Rico, por el término de un año escolar universitario, de 1934 a 1935; que el peticionario ha cumplido y está dispuesto a seguir cumpliendo con todas las obligaciones impuéstasle por dicho contrato; que con anterioridad al 2 de septiembre de 1934 el Canciller de la Universidad formuló cargos al peticionario, basándose en la sección 3 del Capítulo XVII del Reglamento de la Universidad y de su Junta de Síndicos, que provee que "un carácter irreprochable y una vida privada sin tacha y libre de crítica justa, deberá predominar en toda persona que sirva en la Universidad, y que cualquier deficiencia en esas cualidades será interpretada tan estrictamente como si

fuera una ineficiencia en la preparación académica''; que la Junta de Síndicos suspendió al peticionario de empleo y sueldo con fecha 5 de septiembre de 1934 y en 19 del mismo mes le separó permanentemente por considerar que su conducta es incompatible con su cargo; que dichos acuerdos fueron tomados sin dar aviso al peticionario y sin concederle oportunidad para defenderse, sin justa causa, sin que se probaran los cargos y abusando de las facultades discrecionales que la ley concede a la Junta demandada; y que el peticionario recurre al *mandamus* por carecer de otro remedio legal adecuado.

La corte inferior expidió un auto condicional de *mandamus*, por el que ordenaba a José Padín, Félix Córdova Dávila, Clemente Ruiz Nazario, Francisco Parra Toro, Felipe Carro, Jaime Anéxy, Rafael Martínez Nadal, Francisco Capó y Rafael Menéndez Ramos, en su carácter de Síndicos de la Universidad, que repusieran en el cargo al peticionario o de lo contrario que comparecieran a mostrar causa por las cuales no debiera dictarse el auto solicitado.

El demandado José Padín, en su carácter de Presidente de la Junta de Síndicos, compareció ante la corte para pedir la anulación del auto condicional, alegando: (*a*) que la petición no aduce hechos suficientes para autorizar la concesión del auto de *mandamus* ni para determinar causa de acción contra los demandados; (*b*) que la corte no ha adquirido jurisdicción para expedir el auto contra todos los demandados; y (*c*) que el peticionario tiene un remedio legal adecuado, como lo es la acción de daños y perjuicios por incumplimiento de contrato.

El demandado José Padín presentó al mismo tiempo su contestación, en la que niega que los cargos formulados contra el peticionario se basaran exclusivamente en la citada sección del Reglamento, y alega que la Junta de Síndicos, de acuerdo con la sección 8 de la Ley núm. 50 de 21 de julio de 1925 (pág. 283), tiene facultad para separar al peticionario de su empleo, cuando a juicio de la junta la conveniencia de

la Universidad así lo requiera, sin necesidad de formularle cargos o de darle oportunidad de ser oído en su defensa; que aun cuando la junta estaba facultada para separar al peticionario sin oírlo, sin embargo, en la sesión de septiembre 5, 1934, se acordó comunicarle al peticionario los cargos que habían sido formulados contra él y concederle un plazo de diez días para contestarlos; que el peticionario fué notificado de acuerdo con la resolución de la junta, recibiendo el pliego de cargos el día 8 de septiembre de 1934; que el peticionario nunca contestó los cargos oficialmente, ni se dirigió en forma alguna a la Junta de Síndicos pidiendo ser oído o que se celebrara una vista; que el peticionario publicó por medio de la prensa su contestación en la que admitió la certeza de los hechos que se le imputaban e hizo manifestaciones contrarias a la buena marcha de la Universidad; y que en 19 de septiembre de 1934, la Junta de Síndicos, después de cerciorarse de que el pliego de cargos le había sido comunicado al peticionario y de que éste no había presentado contestación, procedió a comprobar los cargos mediante el examen de testigos y a separar de su cargo al peticionario.

El demandado compareciente alegó además que el peticionario no es ni ha sido nunca un funcionario o empleado público; que las relaciones que existieron entre el peticionario y la Junta de Síndicos fueron las derivadas de un contrato consensual bilateral o mutuo de arrendamiento de servicios profesionales, de índole personal, del que no puede exigirse el cumplimiento específico mediante *mandamus,* ni en ninguna otra forma; y por último, que la corte no tenía jurisdicción sobre los demás demandados.

La corte de distrito consideró las cuestiones de derecho planteadas por las alegaciones de ambas partes, y sin entrar a considerar el caso en sus méritos, declaró sin lugar la petición y anuló el auto alternativo que había expedido. Contra esa sentencia se ha establecido el presente recurso.

En el día señalado para la vista del presente recurso, el demandado y apelado José Padín presentó una moción en

la que solicita se desestime la apelación por no tener esta corte jurisdicción sobre las personas de los otros ocho demandados, ninguno de los cuales fué emplazado en el recurso ante la corte inferior, ni notificado en forma alguna del auto condicional expedido por dicha corte. Se alega en la moción que el único demandado que fué emplazado, notificado del auto condicional y que compareció ante la corte, fué el Presidente de la Junta de Síndicos, Dr. José Padín; que ninguno de los otros demandados compareció en forma alguna, ni se sometió en manera alguna a la jurisdicción de la corte inferior, ni a la de esta Corte Suprema; y que ésta carece de jurisdicción para conocer de esta apelación, porque no habiendo sido emplazados ni estando ante ella los citados ocho demandados, esta corte no puede continuar conociendo de una apelación que tiene por objeto obtener la revocación de una sentencia favorable a dichos demandados, los que serían afectados por tal revocación si la misma fuere dictada.

Debemos considerar y resolver como una cuestión previa la de si esta corte tiene jurisdicción para considerar y resolver los errores que se imputan a la corte sentenciadora.

Hemos examinado cuidadosamente los autos de este caso y no encontramos en ellos constancia alguna de que los ocho demandados, que en unión del Sr. José Padín constituyen la Junta de Síndicos, hayan sido emplazados para comparecer ante la corte de distrito, ni de que se les haya notificado el auto alternativo, ni de que se hayan sometido individualmente a la jurisdicción de la corte inferior.

El legajo de la sentencia presentado ante esta corte no contiene la citación ni la prueba de haber sido hecha a dichos demandados, ni tampoco nota alguna que haga constar que se registrara la rebeldía de los mismos, según lo requieren los artículos 233 y 299 del Código de Enjuiciamiento Civil, ed. 1933. Y el artículo 303 del mismo código dice:

"Artículo 303.—Si el apelante dejare de presentar los documentos requeridos, la apelación deberá ser desestimada sin oírle."

Y en esas disposiciones legales basa la representación del demandado José Padín su moción para que la apelación sea desestimada por falta de jurisdicción sobre las personas de sus ocho compañeros de la Junta de Síndicos de la Universidad.

A primera vista, parece tener absoluta razón el apelado. Sin embargo, la lectura cuidadosa del récord del caso revela ciertos hechos que no podemos dejar pasar desapercibidos y que en nuestra opinión debilitan la aparentemente fuerte posición del apelado.

La Ley núm. 50 aprobada el 21 de julio de 1925, intitulada "Ley sobre la reorganización de la Universidad de Puerto Rico" provee:

"Sección 2.—La Junta de Síndicos nombrada, según se provee en la Sección 3 de esta Ley, y sus sucesores, constituirá, y por la presente constituye, una corporación bajo la denominación de 'La Universidad de Puerto Rico,' y con este nombre tendrá derecho a demandar y ser demandada, a adquirir y poseer bienes muebles e inmuebles, a hipotecar y vender los mismos, a contraer deudas, a celebrar contratos, etc."

De acuerdo con la disposición legal transcrita, las personas que constituyen la Junta de Síndicos y sus sucesores, al aceptar el cargo de síndico, pierden cada una de ellas su personalidad individual para refundirse todas en una nueva persona jurídica o corporación, que actuará en el campo de los negocios bajo la denominación de "La Universidad de Puerto Rico."

Cualquier persona que creyere tener alguna causa o derecho de acción contra la Junta de Síndicos colectivamente, como corporación, puede dirigir su demanda contra "La Universidad de Puerto Rico", y de acuerdo con lo provisto en el artículo 93 del Código de Enjuiciamiento Civil, ed. 1933, puede someter a la jurisdicción de la corte a toda la Junta de Síndicos, como corporación, mediante la entrega de una copia de la citación o emplazamiento al Presidente de la corporación, o sea al Presidente de la Junta de Síndicos de

"La Universidad de Puerto Rico", que en este caso lo es el demandado Dr. José Padín.

Es cierto que la demanda en este caso se entabló contra los nueve demandados, mencionando el nombre de cada uno de ellos y agregando las palabras "en su carácter de miembros de la Junta de Síndicos de la corporación 'La Universidad de Puerto Rico'," en vez de haber entablado la acción contra "La Universidad de Puerto Rico" simplemente, o agregando los nombres de las personas que forman la Junta de Síndicos. Pero eso no pasa de ser un mero defecto técnico que puede ser subsanado por actos posteriores de alguna persona que tenga facultad para subsanarlo y para someter a la Junta de Síndicos, como corporación que actúa bajo el nombre de "La Universidad de Puerto Rico", a la jurisdicción de la corte ante la cual se inició la acción.

No tenemos duda de que si la acción se hubiera intitulado "Clemente Pereda v. La Universidad de Puerto Rico", la entrega de la citación al Dr. José Padín, Presidente de la Junta de Síndicos, hubiese sido bastante para someter a la corporación, o sea a la totalidad de la Junta de Síndicos a la jurisdicción de la corte inferior.

Aunque del legajo de la sentencia no aparece que se haya hecho la citación de persona alguna, sí aparece que el Dr. José Padín compareció ante la corte inferior a pedir la anulación del auto condicional y a contestar la orden para mostrar causa, y que en ambos casos lo hizo "en su carácter de Presidente de la Junta de Síndicos de la Universidad de Puerto Rico."

Debemos resolver que el defecto técnico que pudiese haber en la titulación del caso fué subsanado por la comparecencia del demandado Padín en la forma que hemos indicado; y que esta corte tiene jurisdicción para considerar la única cuestión legal que a nuestra consideración se somete por el presente recurso y que podemos formular así: ¿Es un Profesor de la Universidad de Puerto Rico, contratado por la

Junta de Síndicos para prestar sus servicios profesionales a dicha institución durante el término de un determinado año escolar, un empleado o funcionario público de El Pueblo de Puerto Rico, comprendido dentro del Servicio Civil y por tanto con derecho a no ser separado del servicio sino mediante cargos probados y después de haber tenido oportunidad de ser oído en su defensa?

██ ██ La ley sobre la Reorganización de la Universidad, por su sección 2, supra, constituyó a la Junta de Síndicos en una entidad corporativa bajo la denominación de "La Universidad de Puerto Rico" y confirió a la persona jurídica así creada todas las facultades que generalmente se confieren por la ley a las corporaciones, especialmente la de celebrar contratos, y la de hacer o mandar hacer todo lo que fuere necesario para el cumplimiento de su misión como centro educativo.

La sección 3 de la citada ley ha confiado el gobierno interno de la Universidad a una Junta de Síndicos, la que ha sido investida por la sección 7 con facultades para establecer los puestos de los catedráticos y profesores de la Universidad, fijar sus sueldos y emolumentos y hacer y prescribir reglamentos, reglas y estatutos para el régimen de la institución. La sección 8 confiere facultad al Canciller para nombrar los catedráticos, profesores y empleados de la Universidad para los puestos establecidos por la Junta de Síndicos, la que deberá aprobar los nombramientos antes de que los incumbentes tomen posesión; y dispone, *que la Junta de Síndicos tendrá poder para separar de su puesto a cualquier empleado de la institución, cuando a su juicio la conveniencia de la misma así lo requiera.*

Esta corte resolvió en fecha muy reciente, que el propósito claro y evidente de la Ley Sobre la Reorganización de la Universidad de Puerto Rico fué el de organizar ese centro docente como una entidad jurídica enteramente distinta y separada de la entidad "Gobierno Insular de Puerto Rico", y concederle amplia autonomía para poder funcionar libre-

mente bajo las reglas y restricciones que a sus funcionarios y empleados impusiere la Junta de Síndicos y sin sujetarse en manera alguna a las disposiciones de la Ley de Servicio Civil que regulan el nombramiento y la remoción de los funcionarios y empleados del Gobierno Insular de Puerto Rico. Véanse: *Maura* v. *Sancho Bonet, et als.*, 49 D.P.R. 860, y *Vincenty* v. *Junta de Síndicos*, 45 D.P.R. 99.

La única ley que conocemos, que regula las separaciones de los funcionarios y empleados públicos es la Ley de Servicio Civil (Ley núm. 88 de mayo 11, 1931, pág. 535), que dispone:

"Sección 28.—*Separaciones.* — Ninguna persona que ocupe una plaza o destino (*office or place*) en el *servicio clasificado* será separada o despedida, salvo por causa justificada y formulación de cargos, y no antes de dársele oportunidad para ser oída en defensa propia. . . ." (Bastardillas nuestras.)

El Servicio Clasificado comprende todos los funcionarios y empleados del Gobierno Insular que no estuvieren específicamente comprendidos en el Servicio no Clasificado; y los nombramientos y las separaciones de dichos funcionarios sólo podrán hacerse en la forma que provee la sección 28, supra. Véase sección 5, Ley de Servicio Civil.

La misma sección 5, supra, dispone que hasta tanto se hagan de conformidad con la Ley de Servicio Civil y sus reglamentos, los nombramientos de los funcionarios y maestros de las escuelas públicas, estos funcionarios y maestros continuarán en el Servicio no Clasificado.

No se ha llamado nuestra atención hacia ley alguna que disponga que los funcionarios y maestros de las escuelas públicas deban ser nombrados de acuerdo con las leyes y reglamentos del Servicio Civil. Y a falta de esa ley tenemos que resolver, de acuerdo con la citada sección 5, que los maestros de las escuelas públicas, no están comprendidos en el Servicio Civil Clasificado y que no tienen por tanto derecho a invocar la protección de la sección 28 de la Ley de Servicio .

Civil, que es aplicable solamente a los funcionarios y emplea-
dos nombrados de acuerdo con dicha ley y comprendidos en
el Servicio Clasificado.

La sección 2 del Capítulo IX del Reglamento de la Uni-
versidad de Puerto Rico, dice así (bastardillas nuestras):

### "Término de Nombramiento

"Sección 2.—A pesar de que la Junta de Síndicos está obligada
bajo los estatutos a elegir anualmente los miembros del claustro y
todos los demás empleados, procurará que los nombramientos tengan
el carácter de permanentes, sujetos a que su eficiencia en el servicio
continúe . . .; *reservándose la Junta de Síndicos el derecho de ter-
minar los servicios en cualquier tiempo que lo estime conveniente
para el interés de la Universidad. Todo empleo en la Universidad
deberá ser aceptado bajo estas condiciones.*"

Bajo esas condiciones del Reglamento y con conocimiento
de las facultades que la Ley de la Reorganización confiere a
la Junta de Síndicos se establecieron las relaciones que por
el término del año escolar universitario 1934–1935 habrían
de existir entre la Universidad de Puerto Rico y el Profesor
Clemente Pereda. Que esas relaciones eran de naturaleza
contractual lo reconoce el propio peticionario cuando alega
en el párrafo segundo de su petición "Que con fecha 25 de
mayo de 1934 la Junta de Síndicos de la Universidad de
Puerto Rico *contrató los servicios* del peticionario extendién-
dole un nombramiento de Profesor Auxiliar de Pedagogía
*por el término de un año escolar universitario* que comprende
todo el curso escolar universitario del año 1934 a 1935."

En el caso de *State Ex Rel. Sittler* v. *Board of Education,*
49 L.R.A. (N. S.) 62, los hechos eran casi idénticos a los del
caso de autos. La peticionaria fué contratada para enseñar
en las escuelas públicas por un contrato que disponía que
la junta podría removerla en cualquier momento, mediante
treinta días de aviso por escrito, si su trabajo o su conducta
no fuesen satisfactorios a dicha junta. Al ser separada de
su cargo por acuerdo de la junta, la peticionaria solicitó un

auto de *mandamus* para que se le repusiera en su puesto, y denegado el auto por la corte de distrito apeló. En su opinión confirmando la sentencia la Corte Suprema de New Mexico dijo:

"Existe un error fundamental en el argumento del abogado de la apelante, al efecto de que el *mandamus* puede decretarse bajo las circunstancias de este caso. Existe un principio general universalmente aplicado, que el *mandamus* no es un recurso utilizable para hacer valer derechos contractuales, por la razón de que existe otro remedio adecuado en el curso ordinario de la ley, en la forma de una acción por daños y perjuicios. (Numerosas citas.)

"Es solamente cuando el profesor, por disposición expresa de la ley, tiene la posesión fija de un cargo (*fixed tenure of office*), o cuando puede ser removido solamente en una forma expresamente prescrita, y cuando, como consecuencia, es el claro deber ministerial de una junta escolar mantenerlo en su puesto, que puede expedirse el *mandamus*. . . ."

"Un caso que se considera como autoridad sobre esta materia es el de Kennedy v. Board of Education, 82 Cal. 483. Resulta que en California, por razón de los términos de sus estatutos, los tenedores de certificados expedidos por la ciudad, una vez nombrados no podrán ser separados de sus cargos más que por violación de los reglamentos de la Junta de Instrucción, o por incompetencia o por conducta antiprofesional o inmoral. Según lo han interpretado las cortes de aquel estado, este estatuto confiere a los tenedores de tales certificados, después de haber sido nombrados para enseñar en una ciudad de California, *en el caso de que el término por el cual haya sido empleado el profesor no estuviese fijado en el contrato*, el derecho a ocupar el puesto indefinidamente, a menos que fuere separado de él por las causas mencionadas en el estatuto. . . . Basándose en los términos del estatuto, la corte sostuvo que un profesor tan pronto era nombrado adquiría un derecho de carácter continuo y permanente de la naturaleza de un cargo público (*office*), y que, como consecuencia, los funcionarios escolares carecían de autoridad para removerlo. La corte hace constar claramente, que es solamente por razón de los términos del estatuto que sostienen que el *mandamus* es un remedio procedente . . . La corte dijo además: 'Según hemos visto, el término durante el cual el apelado tenía derecho a ocupar el puesto *no estaba fijado por ningún contrato con el apelante*. La duración de su término de servicio está fijado por el estatuto; y su

separación del cargo no fué una mera violación de un contrato, sino la de una disposición expresa de un estatuto que prohibe tal separación.'

"El abogado del apelante trata de deducir de nuestros estatutos una conclusión que no podemos adoptar. No se ha señalado disposición alguna de nuestros estatutos que pueda autorizarnos a decidir que un profesor de las escuelas públicas de este estado tiene una posesión de su cargo (*tenure of office*) distinta a la que le confiere el contrato celebrado por él con las autoridades escolares. No habiendo una disposición mandatoria de la ley, no conocemos razón alguna para que impongamos a las autoridades escolares restricciones en cuanto a la forma de los contratos que ellas celebran con los maestros o en cuanto a sus poderes de remoción. Faltando esas disposiciones legales mandatorias, la facultad de emplear incluye el poder para remover. (Citas). Esto es así especialmente cuando el poder se ha reservado específicamente en el contrato. La cuestión en este caso es si la Junta tenía la facultad que ha tratado de ejercer, y sostenemos que la tiene."

En el caso de *Lewellen* v. *Smith*, 49 Neb. 755, 69 N. W. 114, la Corte Suprema de Nebraska decidió que un contrato para enseñar en las escuelas públicas es un contrato de servicios personales; que un profesor no es un funcionario público, ni el puesto un cargo público (*office*); que el profesor tiene un remedio adecuado en la acción de daños y perjuicios por incumplimiento de contrato, en caso de que fuere separado de su cargo antes de vencer el término por el que contrató sus servicios; y que en un caso de esa naturaleza no procede el *mandamus*.

El apelante cita en apoyo de su contención las decisiones de esta corte en los casos de *Gil* v. *Chardón*, 41 D.P.R. 210, y *Romero* v. *Gore*, 46 D.P.R. 378. No creemos que dichas decisiones sean aplicables al caso de autos. Los peticionarios en los dos casos citados eran empleados o funcionarios públicos del Pueblo de Puerto Rico, comprendidos en el Servicio Civil Clasificado, que no podían ser separados de sus cargos sino en la forma prescrita por la Ley de Servicio Civil.

Para sostener su alegación de que el apelante es un funcionario público, se citan las palabras del Juez Marshal en *U. S.* v. *Maurice,* 2 Brock. 96, Fed. Cas. núm. 15747:

"Un cargo (*office*) se define como una función pública o empleo público, y el que desempeña los deberes del cargo es un funcionario (*officer*). Aunque un cargo es un empleo, no resulta como consecuencia que todo empleo es un cargo. Un hombre puede ciertamente ser empleado bajo un contrato, expreso o implícito, para ejecutar un acto o prestar un servicio, sin convertirse en un funcionario. Pero si es un deber continuo, que está definido por reglas prescritas por el Gobierno, *y no por contrato,* el que ha de desempeñar el individuo nombrado por el gobierno, y aquél entra a desempeñar los deberes de su cargo, sin un contrato que defina dichos deberes, si esos deberes continúan, aunque la persona sea cambiada; parece muy difícil distinguir tal función o empleo de un cargo (*office*), o la persona que desempeña los deberes de un funcionario."

Las palabras "y no por contrato" que hemos subrayado en el párrafo que acabamos de transcribir, fueron suprimidas en la cita que aparece en el alegato del apelante. Debemos presumir que la supresión ha sido hecha inadvertidamente, pero el hecho es que con la restauración de esas palabras la definición del Juez Marshal concuerda con la doctrina de *Sittler* v. *Board of Education, Kennedy* v. *Board of Education* y *Leweller* v. *Smith,* supra, que sostienen que una persona que se contrata para enseñar en las escuelas públicas, por un término fijado en el contrato, no es un funcionario público y sí un empleado contractual.

También cita el apelante el caso de *Vincenheller* v. *Reagan,* 64 S. W. 278, como autoridad que sostiene que un profesor de una universidad estadual es un funcionario público (*public officer*). Es cierto que la corte sostuvo que el peticionario era un "public officer." Y no podía llegar a otra conclusión, porque la resolución creadora del cargo que ocupaba el peticionario decía así:

"*Resuélvase:* (1) Que el cargo (*office*) de vicedirector y pomologista de la estación experimental agrícola era y por la presente

queda creado, y que W. G. Vincenheller sea y por la presente es elegido para ocupar dicho puesto (*position*) por el término de cuatro años, etc.

"(2) Que parte de los deberes de dicho funcionario (*officer*) serán, etc."

Después de ser nombrado el peticionario Vincenheller, y antes de que expirase el término de su nombramiento, la Legislatura de Arkansas aprobó una ley por la que el cargo de pomologista quedó abolido, con prohibición a la Junta de Síndicos de continuar pagando sueldos por tal concepto. Vincenheller solicitó auto de *mandamus* para que se le repusiera en el cargo, alegando que la ley de la Legislatura que abolió el cargo es anticonstitucional porque menoscaba las obligaciones de un contrato. La Corte Suprema, al confirmar la sentencia que negó el *mandamus*, dijo:

"El apelante insiste también en que la Sección 6 de la Ley de mayo 23, 1901, es anticonstitucional, porque menoscaba las obligaciones de un contrato. Si el cargo que ocupaba el apelante bajo la resolución de la Junta de Síndicos era un cargo público (*office*), la ley no menoscaba las obligaciones de un contrato. Los deberes y obligaciones de un funcionario (*officer*) nacen de la ley *y no de un contrato,* y esa ley puede ser enmendada o derogada; y, como incidental a esa facultad, la legislatura puede aumentar o disminuir el sueldo, o abolir el cargo, a menos que estuviere prohibido por la constitución."

Los hechos de ese caso eran tan claros y evidentes, que la corte no podía menos de llegar a la conclusión de que las relaciones que existían entre Vincenheller y la Universidad de Arkansas no eran de naturaleza contractual.

En el caso de autos, el peticionario ha alegado también la naturaleza contractual de las relaciones que se establecieron entre él y la Universidad, al decir en su demanda que la Junta de Síndicos contrató sus servicios por el término de un año; y no ha alegado en manera alguna en su petición que él fuese un funcionario público.

La Junta de Síndicos ha atacado la suficiencia de la petición y ha negado específicamente que el peticionario sea un

funcionario público, insistiendo en que el peticionario era un simple empleado contractual.

Los hechos del presente caso y la jurisprudencia que hemos citado nos llevan a la conclusión de que el peticionario no era un funcionario público y sí un empleado contractual de la Universidad de Puerto Rico; que las relaciones entre el peticionario y la Universidad tienen que regirse por el contrato mismo, que es la ley de los contratantes; y que habiendo el peticionario contratado sus servicios y aceptado el empleo bajo la condición expresa de que la Junta de Síndicos se reservaba el derecho de terminar los servicios en cualquier tiempo que lo estimare conveniente para el interés de la Universidad, esta Corte carece de facultad para reformar el contrato entre las partes o para investigar en un procedimiento de esta índole las causas o motivos que haya podido tener la Junta de Síndicos, para hacer uso del derecho que se reservara para poder prescindir de los servicios de un empleado cuando así lo exigiere la conveniencia y la buena marcha de la Universidad.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.