Anselma Bezares y Otros, peticionarios y recurridos, *v.* Dolores González, Alcalde de San Lorenzo, demandado y recurrente; Basilio Domínguez et al., demandantes y recurrentes, *v.* Hilda Pacheco de Algarín, Alcaldesa de Juncos, demandada y recurrida; Félix Roldán Rosa et al., demandantes y recurrentes, *v.* María Socorro Pérez de Gaos, Alcaldesa de Fajardo, demandada y recurrida.

*Números:* 485, 535 y 536 *Resuelto:* 2 de febrero de 1962

---

*A. Quirós Méndez* y *F. A. Quirós Méndez,* abogados del recurrente en el Caso 485; *Luis Muñoz Rivera* e *Hipólito Marcano,* abogados de los recurridos en el Caso 485; *Luis Muñoz Rivera* e *Hipólito Marcano,* abogados de los recurrentes en los casos 535 y 536; *Oscar R. Brizzie,* abogado de la recurrida en el Caso 535, *Juan Nevárez Santiago* y *Francisco González Jr.,* abogados de la recurrida en el Caso 536.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Estas son acciones de *mandamus* interpuestas por empleados municipales destituidos quienes han solicitado que se les restituya en sus empleos. En el *Número 485* el Alcalde de San Lorenzo envió una comunicación fechada 9 de enero de 1961 a 38 empleados del municipio notificándoles que habían sido sustituidos en el empleo que ocupaban por un nuevo incumbente y ordenándoles la entrega de las propiedades bajo su custodia. De estos 38 empleados ocho habían servido durante 8 años; otros ocho durante 5, 6 y 7 años; dieciséis entre 1 y 4 años y tres habían servido menos de un año. El récord no demuestra el tiempo de servicio de los tres empleados restantes.

En el *Número 535* la Alcaldesa de Juncos en 9 de enero de 1961 sustituyó en sus empleos a 14 empleados del municipio. Uno de ellos había servido durante 20 años; uno por 16 años; dos por 12 años; uno durante 7 años; cinco por 4 años; tres durante 2 años y uno había servido 3 meses.

En el *Número 536* la Alcaldesa de Fajardo en 9 de enero de 1961 destituyó de sus empleos a 14 empleados de ese municipio. Tres habían servido durante 16 años; uno, 14 años; dos por 12 años; uno durante 10 años; dos, 7 años; uno por 6 años; dos durante 4 años y dos habían servido menos de un año. Uno de ellos, Armando Colón Cruz, de hecho fue cambiado de un empleo de Director de la Defensa Civil con un

sueldo de $175 a otro con un sueldo menor de $110.00 que él rechazó.

La Sala de Caguas del Tribunal Superior hizo conclusiones de hecho en el sentido de que el Alcalde de San Lorenzo había dejado cesantes a estos empleados en sus puestos sin previa formulación de cargos, sin celebración de vista y únicamente mediante la comunicación antes mencionada. Como cuestión de derecho concluyó que estos empleados habían sido ilegalmente destituidos, declaró con lugar la petición de *mandamus* y ordenó al Alcalde reponer a los demandantes en sus respectivos empleos retroactivamente al 9 de enero de 1961 con el pago de sus haberes desde esa fecha, y a retenerlos en dichos empleos. Impuso al Alcalde las costas y $800 de honorarios de abogado.

En los casos de la Alcaldesa de Juncos y de la Alcaldesa de Fajardo, la Sala de Humacao del Tribunal Superior concluyó como cuestión de hecho que los empleados fueron removidos sin previa formulación de cargos, sin celebración de vista alguna y *"sin causa justificada para ello."* Como cuestión de derecho concluyó la Sala sentenciadora que estos empleados pudieron haber sido así destituidos, declaró sin lugar las demandas e impuso a los peticionarios en cada caso el pago de las costas y de $200 de honorarios de abogado.

La Ley Municipal, Ley 142 de 21 de julio de 1960, 21 L.P.R.A. (ed. 1961) secs. 1101 y siguientes,—que entró en vigor el 9 de enero de 1961—dispone en su artículo 35 que entre los deberes, funciones y atribuciones del Alcalde están especialmente: nombrar a todos los funcionarios y empleados del municipio y separarlos de sus cargos cuando sea necesario para el bien del servicio, de acuerdo con el procedimiento dispuesto en la ley. El artículo 42 dispone que en ciertos municipios los funcionarios administrativos serán el Alcalde, el Secretario y el Director de Finanzas, y en los demás el Alcalde, el Secretario Auditor y el Tesorero, con facultad la Asamblea Municipal,—artículo 43,—para crear cargos adi-

cionales de funcionarios administrativos. De acuerdo con el artículo 44, estos funcionarios administrativos desempeñarán sus cargos por el término para el cual el Alcalde hubiere sido electo o nombrado (4 años, Art. 33), a menos que fueren destituidos por justa causa, previa formulación de cargos. El funcionario destituido puede apelar al Tribunal Superior.

El artículo 91 repite que todos los nombramientos de empleados serán hechos por el Alcalde, a propuesta de los funcionarios administrativos municipales respectivos. Ningún empleado municipal será nombrado, ascendido, degradado o suspendido ni en forma alguna se discriminará contra él, por razón de razas o de ideas políticas o religiosas, según reza el artículo 92. Dispone el 93 que los empleados municipales podrán ser destituidos por el Alcalde, *por justa causa, previa formulación de cargos* y *previa audiencia* señalada con diez días de anticipación ante una Comisión de tres personas nombradas por el Alcalde con el consejo y consentimiento de la Asamblea Municipal que no serán empleados municipales. En dicha audiencia el empleado puede defenderse y estar representado por abogado. Si la Comisión lo destituyere podrá solicitar revisión judicial ante el Tribunal Superior en cuanto a cuestiones de derecho y la decisión de este Tribunal será final e inapelable.

Tratándose de una legislación que entró en vigor el mismo día en que estos empleados fueron dejados cesantes, y habiendo servido la mayor parte de ellos durante largos años, ante las cuestiones suscitadas haremos un recuento histórico de las disposiciones legislativas que han estado en vigor cubriendo este aspecto del funcionamiento municipal.

*Ley Municipal de 1902.*—Disponía en la sección 32 que el Alcalde nombraría, dirigiría y vigilaría la conducta de todos los empleados de la municipalidad, castigándolos, cuando fuere necesario, con suspensión o destitución. Se crearon los cargos de Secretario, Tesorero, Inspector de Obras Públicas y un oficial Inspector de Sanidad nombrados por el

Alcalde con la aprobación del Concejo, quienes ejercían sus cargos mientras observaban buena conducta, a menos que fueran separados por razones suficientes y justas después de ser oidos en su defensa. Había un Contador nombrado por el Concejo y separado por éste por justa causa y previa audiencia.

*Ley Municipal de 8 de marzo de 1906.*—Disponía su artículo 32, según éste quedó enmendado por Ley de 14 de marzo de 1907 y por la Ley 35 de 10 de marzo de 1910, que el Alcalde nombraría todos los empleados del municipio cuyos nombramientos no se proveyeran de otro modo en la ley y que estuvieran autorizados por las asignaciones del presupuesto y podría, por justa causa, destituir a todos los funcionarios y empleados nombrados por él solamente, o nombrados por él con la anuencia y consentimiento del Concejo Municipal, excepto que el Contador no podía ser destituido sin el consentimiento del Concejo Municipal después de haberle formulado cargos el Alcalde ante el Concejo y de haberlos contestado el Contador. La ley dispuso el nombramiento de un Secretario, un Tesorero, un Contador, un Inspector de Sanidad y un Inspector de Obras Públicas cuyos términos finalizaban al terminar la incumbencia del Alcalde que los hubiere nombrado.

*Ley Municipal de 31 de julio de 1919.*—Según fue enmendada por la 9 de 12 de mayo de 1920 y la 60 de 12 de julio de 1921, se disponía el nombramiento por la Asamblea Municipal del Concejo de Administración, compuesto por un Comisionado Municipal de Servicio Público, Policía y Prisiones, quien era el Jefe Ejecutivo, y Comisionados de Beneficencia, Hacienda, Obras Públicas e Instrucción Pública, y el nombramiento de un Secretario y de un Auditor. Los miembros del Concejo de Administración ejercían sus cargos por cuatro años y excepto el Ejecutivo, podían ser separados por la Asamblea Municipal por justa causa previa audiencia y oportunidad de defenderse. Con la aprobación del Concejo

de Administración cada uno de sus miembros nombraba los empleados de su oficina y con igual aprobación podía destituirlos por justa causa previa audiencia.(1)

*Ley Municipal de 1928 según ha sido enmendada.—21 L.P.R.A. (ed. 1955) secciones 1 y siguientes.*—Autorizó al Alcalde a nombrar todos los funcionarios administrativos excepto el Auditor, los cuales ejercían sus cargos por el término para el cual el Alcalde hubiese sido elegido o nombrado. Todos los nombramientos de empleados serían hechos por el Alcalde a propuesta de los funcionarios administrativos respectivos. El Alcalde podía destituir dichos funcionarios y empleados por causa justificada, concediéndose a los interesados audiencia pública y oportunidad para defenderse. [1-2]

El precedente historial de las leyes municipales demuestra dos cosas: (1) que la Asamblea Legislativa ha mantenido para los municipios la conocida y clásica distinción entre un funcionario y un empleado. Excepto en la Ley de 1902, los funcionarios tuvieron siempre un término de incumbencia que no trascendía el término del Alcalde electo o nombrado. Por el contrario, ninguna ley municipal fijó término de incumbencia a los empleados. (2) Tanto para los funcionarios antes de expirar el período de su incumbencia, como para los empleados, las leyes municipales dispusieron que ellos no podían ser separados de sus cargos o empleos sin justa causa o sin causa suficiente, de ordinario previa audiencia y oportunidad de defenderse.

En *Belaval* v. *Todd* decidido en el año 1915, 22 D.P.R. 633, interpretamos las disposiciones pertinentes de la Ley Municipal de 1906 según fue enmendada en 1910. El Dr. Belaval

---

(1) A partir de la Ley 11 de 25 de junio de 1924, enmendada por la 92 de 22 de agosto de 1925, enmendatorias de la Ley Municipal de 1919, el Concejo de Administración quedó compuesto por un Alcalde, Director de Beneficencia Municipal, Tesorero, Director Escolar, Director de Obras Públicas, Auditor y Secretario, nombrados por el término para el cual el Alcalde fue elegido o nombrado. Se facultó al Alcalde a nombrar a los demás empleados municipales y a destituir funcionarios y empleados por justa causa, previa audiencia y oportunidad de defenderse.

prestaba servicios como Director de los hospitales municipales de San Juan y fue destituido por el Alcalde mediante comunicación en que se le informaba que cesaba en su empleo y que otro médico quedaba encargado del mismo. Seguimos el principio general de que cuando la facultad para destituir es por *causa* o *justa causa*, ello envuelve una facultad judicial y la persona que se destituye debe ser notificada y oida; y que esto envolvía un procedimiento semejante a un juicio en el cual se le diera al funcionario o empleado la oportunidad de defenderse y presentar prueba. Confirmamos a la entonces Corte de Distrito de San Juan que había ordenado mediante *mandamus* la reposición del Dr. Belaval. Antes, en *Ruiz* v. *Del Valle* (1911), 17 D.P.R. 682, un caso en que decidimos que los requisitos referentes a notificación y audiencia al empleado se habían cumplido, dijimos de paso que un solicitante debía demostrar de modo claro haber sido destituido injustamente, como por ejemplo por causas políticas o de religión.

El caso de *Belaval* volvió por segunda vez a este Tribunal. —24 D.P.R. 26 (1916)—La Corte de Distrito se negó a ordenar la instalación del Dr. Belaval después de confirmada su sentencia, tomando conocimiento judicial de que en el interín, en 4 de noviembre de 1914, se habían celebrado elecciones para los cargos municipales; que el Alcalde elegido, el propio Todd, había tomado posesión en 11 de enero de 1915 y que el término del Dr. Belaval había finalizado como consecuencia de lo anterior.

En esta ocasión discutimos ya los puntos que ahora vuelven a presentarse. Consideramos si el empleo desempeñado por el Dr. Belaval tenía término de duración. Concluimos que se trataba de un empleado y no de un funcionario con incumbencia por término fijo. Consideramos luego si el procedimiento provisto en ley para la destitución obligaba de igual modo a un Alcalde que sucediera a aquél que hubiere hecho el nombramiento o sea, según lo expresamos en la página

:38, si los empleados de los municipios de Puerto Rico nombrados de acuerdo con la sección 32 de aquella ley terminaban automáticamente sus funciones el día en que cesaba el Alcalde que los nombrara, o si continuaban desempeñando sus funciones mientras existía el cargo y mientras cumplían fielmente con los deberes del mismo. A través de una elaborada opinión del entonces Juez Asociado Sr. Del Toro en que analizó la intención legislativa según la propia Ley Municipal y se refirió a las decisiones vigentes, concluimos que los empleados municipales no cesaban en sus empleos con la incumbencia de un nuevo Alcalde o poder nominador.

Los Jueces Asociados Señores Hernández y Aldrey emitieron una opinión disidente fundamentada básicamente en el hecho de que el Dr. Belaval, según sus criterios, era un funcionario que desempeñaba un cargo con término fijo ya extinguido, y no era un empleado. Por consideraciones más bien de orden político algunas de las cuales tienen su refutación en la opinión de la mayoría, los Jueces disidentes también expresaron que aunque se tratara de un empleo el derecho a ocuparlo terminaba cuando por ministerio de la ley se extinguía la Administración municipal durante cuya vida el Alcalde había sido nombrado.

Refiriéndonos a los casos del Municipio de Juncos y del Municipio de Fajardo, la Sala sentenciadora concluyó en derecho que el 9 de enero de 1961 los peticionarios no eran empleados permanentes de acuerdo con el artículo 91 de la Ley Municipal de 1960; que el artículo 93 que dispone la manera de destituir a un empleado municipal no los protegía porque al comenzar la nueva Administración municipal ésta tenía derecho a nombrar a los empleados municipales y el referido artículo era de aplicación después que los empleados hubieran sido seleccionados y nombrados por la nueva Administración. El efecto legal de estas conclusiones es que la Sala sentenciadora insertó, obviamente, un período fijo de incumbencia para los empleados municipales, cual es el de

la vida de la Administración municipal en que fueron nombrados o el término de incumbencia del poder nominador; período de incumbencia ese para los empleados que la propia Asamblea Legislativa no dispuso en la Ley Municipal de 1960 ni en ninguna de las anteriores, como se disponía para el Alcalde y los funcionarios.

Concluyó igualmente la Sala sentenciadora que la teoría sustentada por los Jueces disidentes en el caso de *Belaval* debía ser la aplicable a los casos de autos ya que nada hay en la Ley Municipal vigente demostrativo de que los empleados municipales tienen cargo permanente. ■

Aparte de que ante iguales planteamientos la norma de derecho que rige para los tribunales de primera instancia es la sentada por el Tribunal y no el criterio disidente de uno o de algunos de sus Jueces, por convincente que éste aparente ser, el problema envuelto no es si la Ley Municipal dispone o no que los empleados municipales tengan empleos permanentes. No es un problema de incumbencia, sino de destitución. La ley no deja margen de duda alguno en cuanto al trámite para la destitución de los peticionarios. Tampoco distingue el artículo 93, al ofrecer su manto protector, entre empleados que hubiesen sido nombrados por la propia Administración que destituye y empleados nombrados por una Administración anterior. Véanse: *Cintrón* v. *Berríos*, (1917) 24 D.P.R. 721; *Sarriera* v. *Todd*, (1917) 26 D.P.R. 4; donde se sostuvo el derecho a un *mandamus* reponiendo al empleado aun cuando se encontró que había causa justificada, en un caso en que no se concedió notificación previa y audiencia; cf: *Lavergne* v. *Comisión de la Policía*, (1919) 27 D.P.R. 830; cf: *Corrada* v. *Asamblea Municipal*, (1956) 79 D.P.R. 365; Autieau, *Municipal Corporation Law*, 1958, Vol. 3, págs. 268 et seq; McQuillin, *The Law of Municipal Corporations*, 1949, Vol. 4, págs. 328 et seq. ([2]) ■

---

([2]) Una situación análoga de empleos indefinidos la hemos visto en el servicio civil clasificado (oposición) y en casos de maestros. Sostuvimos

478

Los Alcaldes sostienen que el segundo caso de *Belaval* v. *Todd*, quedó revocado por el segundo caso de *De Castro* v. *Junta de Comisionados*, (1942) 59 D.P.R. 676. No les asiste la razón ya que nada hay en conflicto entre esas dos decisiones. El caso de *Belaval* se resolvió a base de que él era un empleado sin término fijo de incumbencia. En el de *De Castro*, tuvimos que ver con un *funcionario* que bajo el estatuto especial que se diseñó para el Gobierno de la Capital a todos los efectos equivalía a, y ejercía las funciones del Alcalde. Sabemos por el historial de las distintas leyes municipales que han regido, que a partir de 1906 los funcionarios siempre tuvieron término fijo de incumbencia que no trascendía el del Alcalde que los nombraba. El problema realmente suscitado en *De Castro* fue si bajo las disposiciones de la ley especial del Gobierno de la Capital,—Ley 99 de 15 de mayo de 1931,—la cual disponía en su artículo 21 que el Administrador de la Capital sería jefe ejecutivo de la misma y desempeñaría su cargo mientras observara buena conducta, la incumbencia del Administrador era indefinida, o si por el contrario, terminaba después de unas elecciones municipales en que se elegía de nuevo una nueva Junta de Comisionados. La cuestión decidida en *De Castro* fue la del término de incumbencia de un cargo municipal, que equivalía al de un Alcalde, a la luz de las disposiciones de la ley especial que creó dicho cargo. Por razones bien reflexionadas con miras a otras disposiciones de la propia ley y de la interpretación práctica dada a la misma por partidos políticos y

el derecho del empleado a no ser destituido sin justa causa y mediante oportunidad de ser oído y defenderse. Cf: *Gil* v. *Chardón*, (1930) 41 D.P.R. 210; *Pérez* v. *Esteves, Comisionado*, (1932) 43 D.P.R. 13; *Matos* v. *Veve, Marshal*, (1934) 46 D.P.R. 356; *Pérez Marchand* v. *Garrido*, (1935) 48 D.P.R. 457; *Domencch* v. *Corte*, (1935) 48 D.P.R. 542; *Pereda* v. *Padín*, (1936) 49 D.P.R. 948; *Gatell* v. *MacLeod*, (1940) 56 D.P.R. 119; *Cruz* v. *Garrido*, (1941) 58 D.P.R. 653; *González* v. *Gallardo*, (1943) 62 D.P.R. 275; *García* v. *Cordero, Admor.*, (1943) 62 D.P.R. 315; *Rodríguez* v. *Buscaglia, Tes.*, (1944) 63 D.P.R. 490; *Rosario* v. *Gallardo*, (1945) 65 D.P.R. 57; *Cantellops* v. *Fernós*, (1945) 65 D.P.R. 797; *Rivera Valiente* v. *Benítez, Rector*, 73 D.P.R. 377, pág. 380.

otros interesados,—*De Castro* v. *Board of Commr's.*, 322 U.S. 451, págs. 459–465,—resolvimos que aquel cargo de Administrador de la Capital tenía una incumbencia fija de cuatro años.

Es cierto que en el caso de *De Castro* nos referimos, tal vez con más énfasis del necesario, al caso de *Shurtleff* v. *United States*, (1903) 189 U.S. 311, decisión ésta que tuvo que ver con la manera en que el Presidente de los Estados Unidos destituyó a un funcionario. Pero ello no variaba la cuestión allí envuelta y decidida. La relativa a la destitución del Administrador de la Capital ya había sido resuelta en el primer caso de *De Castro*, (1940) 57 D.P.R. 153, confirmado en 116 F.2d 806, certiorari denegado en 314 U.S. 614.(³) ■

El otro argumento que presentan los Alcaldes,—que estaría mejor dirigido a las Cámaras Legislativas por tratarse de una cuestión de derecho político como la constitución y organización de los municipios, siendo ellas mejores jueces de la deseabilidad y conveniencia de las normas a ser implantadas, —es que los puestos municipales son políticos. Se infiere

---

(³) Siquiera por vía de observación, el caso de *Shurtleff*, supra, envolvía la destitución de un funcionario por el Presidente. La ley del Congreso que creó el cargo del funcionario destituido disponía que podía ser removido por ciertas causas que específicamente se hacían constar. Se reafirmó la doctrina de que para destituirlo por cualquiera de aquellas causas debió habérsele dado notificación y audiencia. El Tribunal Supremo, sin embargo, fue de opinión que toda vez que el Presidente no había dado notificación y audiencia, el funcionario no había sido destituido por las causas especificadas. Fundamentalmente lo que resuelve el caso es que el poder constitucional del Presidente de nombrar envuelve el poder de destituir, y que para que un poder así del Presidente quedara limitado, debería aparecer expresamente en el estatuto, y no inferirse por implicación del hecho de que el estatuto fijaba unas causas para la destitución. Pero véase el caso de *Humphrey's Executor* v. *United States*, (1935) 295 U.S. 602, en donde el propio Tribunal Supremo resolvió que una disposición en la ley creando la Comisión Federal de Comercio al efecto de que los Comisionados podrían ser destituidos por el Presidente por ciertas causas especificadas, debía interpretarse y se interpretó en el sentido de que el Congreso intentó restringir el poder de destitución del Presidente a una o más de dichas causas. El caso de *Shurtleff* fue distinguido y su decisión quedó restringida a sus propios hechos y circunstancias.

del argumento que cada nueva administración debe estar en libertad de disponer de los incumbentes sin traba alguna.

El historial de la última Ley Municipal que entró en vigor precisamente el día que estos empleados fueron destituidos no es muy alentador para este planteamiento. Esta ley, aprobada en julio 21 de 1960, fue el Proyecto 285 de la Cámara presentado el 14 de marzo de 1957. Por más de 3 años este proyecto de una nueva ley municipal recibió la consideración de los cuerpos legislativos. Tal como se presentó originalmente, se disponía en el artículo 92 que los nombramientos en el servicio público municipal se harían a base de méritos y para efectuar tal propósito la Asamblea Municipal debería adoptar mediante ordenanzas la reglamentación necesaria con el consejo, ayuda y cooperación de la Oficina de Personal del Estado Libre Asociado. Las ordenanzas dispondrían planes de clasificación y paga uniforme basados en los deberes y responsabilidades de los puestos. El artículo 94 disponía que todo empleado municipal sería designado por el Alcalde por un término probatorio no mayor de seis meses durante el cual el nombramiento podría dejarse sin efecto, y de ahí en adelante tendría un nombramiento con carácter permanente. Se estatuía entonces lo procedente para la destitución de dichos empleados.

Tal como quedó aprobado el proyecto en la Cámara, los nombramientos municipales se harían a base de méritos pero se disponía que los empleados desempeñarían sus cargos por el término por el cual el Alcalde hubiere sido electo o nombrado. En otras palabras, los empleados tendrían término de incumbencia y quedaban en situación similar a los funcionarios. Ya en el Senado, en el informe que rindió su Comisión de Gobierno Estatal y Municipal en 2 de abril de 1959 se propuso la eliminación de la parte que disponía que los empleados desempeñarían sus cargos por el término para el cual el Alcalde hubiere sido electo. En torno a esta eliminación expuso la Comisión: "Entendemos que la permanencia

de los empleados municipales es requisito indispensable para que haya un sistema de méritos y que es un contrasentido decir que habrá un sistema de méritos si no va a haber permanencia para los empleados municipales. Es el propósito de este proyecto fortalecer la eficacia de los servicios municipales." Por otra parte, la Comisión adoptó una enmienda a los efectos de que un número entre dos y seis empleados, según el presupuesto de los municipios, y ocho en el Municipio de San Juan, se consideraran de la absoluta confianza del Alcalde no sujetos a las disposiciones de permanencia. Sobre la nueva Ley Municipal en general, expresó la Comisión que trataba de llevar al nivel municipal el espíritu de reforma que tanto ha contribuido en los últimos años a hacer del Gobierno del Estado Libre Asociado de Puerto Rico una institución que sirve de ejemplo y de orientación a los administradores públicos de otros países.

Tal como quedó finalmente aprobado el proyecto, las disposiciones pertinentes se asemejan más a las de la anterior Ley Municipal que sustituyó. Ha de observarse que quedó eliminada definitivamente la disposición que fijaba término de incumbencia a los empleados municipales durante el período para el cual el Alcalde hubiere sido electo o nombrado, disposición ésta que no aparecía en las anteriores leyes municipales. Puede observarse también que las disposiciones del artículo 93 de la ley vigente en relación con la destitución de empleados municipales es más explícita, y más rigurosa que cualquier disposición anterior en tal sentido. Y es significativo que ya desde el 1916 este Tribunal había interpretado disposiciones semejantes de la Ley Municipal en el sentido de que los empleos municipales no expiraban con la aparición de una nueva Administración municipal, y aun así la Asamblea Legislativa no dispuso en contrario, ni lo hizo tampoco recientemente, para darle un término a los empleos municipales de manera similar al de los funcionarios de modo que no trascendieran la vida de una Administración.

La sentencia dictada por la Sala de Caguas del Tribunal Superior en el caso de San Lorenzo *será confirmada. Habiéndose alegado no obstante que entre los empleados destituidos existían algunos que eran funcionarios, en cuyo caso sus términos habrían expirado, se devuelve el caso a la Sala sentenciadora para que determine sobre el particular.*

Las sentencias de la Sala de Humacao del Tribunal Superior *serán revocadas y se dictarán otras ordenando la inmediata reposición de los recurrentes en sus empleos, retroactivo al 9 de enero de 1961.*

*Se impondrán a las recurridas en cada caso las costas y $400 de honorarios de abogado ante el tribunal de instancia.*

El Juez Asociado Sr. Dávila no intervino.

