FÉLIX V. SOTO GALÁN, demandante y recurrido, *v.* TULIO F. LÓPEZ, ALCALDE DEL MUNICIPIO DE BAYAMÓN, demandado y recurrente.

*Número:* R-63-83     *Resuelto:* 17 de noviembre de 1970

416

*P. J. Santiago Lavandero, Ángel M. Rodríguez Lozada* y *Ramos & Latoni,* abogados del recurrente; *Luis A. Archilla Laugier* y *Mario A. Rodríguez,* abogados del recurrido.

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

En 21 de abril de este año emitimos una opinión en este caso. Una bien fundamentada moción de reconsideración nos ha movido a reconsiderarlo.

En 23 de agosto de 1962 Félix Soto Galán presentó una solicitud de *mandamus* en el Tribunal Superior, Sala de Bayamón, en la cual alegó que era empleado de ese municipio; que el demandado en su capacidad de Alcalde de esa ciudad lo despidió de su cargo sin justa causa y sin cumplir con lo dispuesto en el Art. 93 de la Ley Municipal; y solicitó del tribunal que ordenase al demandado a reponerlo en su cargo y a pagarle los haberes dejados de percibir desde la fecha de su despido.

Contestó el demandado negando que el demandante fuese o hubiese sido empleado del municipio y adujo además que el auto de *mandamus* no procedía en este caso. Luego de la correspondiente vista el tribunal de instancia declaró con lugar la demanda y ordenó al demandado a reponer al demandante en su empleo, con efecto retroactivo a la fecha del despido. Mediante nuestra opinión y sentencia anterior revocamos la sentencia del tribunal de instancia. Hemos llegado a la conclusión de que debemos dejar sin efecto nuestra sentencia anterior y que debemos confirmar la del tribunal a

quo. La razón para ello es que anteriormente incurrimos en el error de considerar que el trabajo que desempeñaba el recurrido era un trabajo temporero y que por ello no le cubrían las garantías del Art. 93 de la Ley Municipal.

La realidad es que, según expresó el Tribunal Superior en sus determinaciones de hecho, el recurrido trabajó para el Municipio de Bayamón, regular y consecutivamente por espacio de catorce meses, prestando servicios como escribiente calígrafo, mediante una remuneración mensual fija, consignada cada mes en nómina. Su nombramiento no fue hecho por un término fijo, temporero, sino por un plazo indefinido.

■ Está en lo cierto el demandante cuando argumenta en su moción de reconsideración que la condición de estar o no un empleado cubierto por el Art. 93 antes citado debe determinarse a base de la función o naturaleza del trabajo que desempeñaba y no del nombre de la plaza o cargo. El demandante ejercía regularmente la función de transcribir las minutas al Libro de Actas de la Asamblea Municipal, función que no hay duda que es de carácter permanente y no temporero, pues es obvio que la Asamblea Municipal es un cuerpo continuo, que existe mientras exista el municipio y su Asamblea Municipal.

■ Es cierto que el recurrido fue nombrado por el Alcalde mediante designación verbal y que aquél no prestó juramento al ocupar el cargo. El hecho de que no se cumplieran todas las formalidades en relación con el nombramiento del recurrido no es determinante para la solución del caso, pues aún asumiendo que no era un empleado *de jure* los hechos demuestran que era un empleado *de facto* y como el Art. 93 de la Ley Municipal no distingue entre empleados *de facto* y empleados *de jure*, no debemos hacerlo nosotros, máxime cuando hacerlo iría contra el principio, reconocido universalmente como deseable en la administración pública,

del servicio de mérito. Así esto ha sido reconocido por la jurisprudencia.

En un caso sustancialmente parecido al de autos, *Barkus* v. *Sadloch*, 120 A.2d 465, se trataba de una empleada municipal que fue despedida sin que se le formulasen cargos y sin celebración de audiencia. Ella planteó la ilegalidad de su remoción a base de un estatuto, el cual, parecido al nuestro, prohibía su despido excepto por justa causa y previa celebración de audiencia. El Tribunal Supremo de Nueva Jersey, expresó, a las págs. 467–468, que las leyes que conceden inamovilidad en un cargo (excepto por justa causa) protegen igualmente a los empleados *de facto* como a los empleados *de jure*. Añadió que la peticionaria era una empleada *de facto* de la ciudad de Garfield, que el término o duración de su empleo no estaba fijado por ley sino que era indefinido, y concluyó que había sido despedida ilegalmente.

En Puerto Rico el derecho aplicable es el siguiente: Para la destitución de los funcionarios y empleados municipales la Ley Municipal exige en su Art. 93, justa causa, formulación de cargos y que se siga un procedimiento con notificación y audiencia. 21 L.P.R.A. sec. 1553. Para la época en que el demandante trabajó para el Municipio de Bayamón (desde el 15 de marzo de 1961 al 22 de mayo de 1962) dicho Art. 93 disponía, en lo pertinente, como sigue:

"Los empleados municipales podrán ser destituidos por el alcalde, por justa causa, previa formulación de cargos y previa audiencia señalada con 10 días de anticipación, la cual audiencia se celebrará ante una comisión de tres personas nombradas por el alcalde con el consejo y consentimiento de la asamblea municipal. En dicha audiencia el empleado podrá defenderse de dichos cargos y estar representado por abogado. Dicha comisión estará compuesta de personas que no sean empleados municipales. . . ."

Ese Art. 93 fue enmendado por la Ley Núm. 114 de 27 de junio de 1964. 21 L.P.R.A. sec. 1553, Suplemento. El

nuevo texto de dicho artículo incluye en su protección a los funcionarios municipales (antes se refería únicamente a los empleados) y contiene otros detalles que por no ser pertinentes a este caso no es necesario pormenorizar aquí.[1]

La Ley Municipal en su Art. 92 dispone además que:

"Ningún empleado municipal será nombrado, ascendido, degradado, o suspendido ni en ninguna forma se discriminará contra él, por razón de razas o de ideas políticas o religiosas." 21 L.P.R.A. sec. 1552.[2]

Ya en *Belaval* v. *Todd, Alcalde*, 24 D.P.R. 26, 39 (1916), este Tribunal, al interpretar una disposición de la Ley Municipal de 1906 que contenía el mismo principio de justa causa que contiene la ley vigente,[3] se expresó como sigue:

"Si la legislatura hubiera deseado que los empleados municipales hubieran podido ser destituídos a su voluntad por los alcaldes, . . . no hubiera empleado las palabras 'por justa causa' que empleó en la sección 32 de la Ley Municipal.

Esas palabras tienen su significado. Esas palabras revelan una intención manifiesta. Esas palabras demuestran que la Legislatura se decidió por organizar en los municipios de Puerto Rico para bien de las administraciones municipales y por consiguiente del pueblo, un cuerpo de empleados que trabaje con el firme convencimiento de que en el cumplimiento de sus deberes descansa la seguridad de sus posiciones."

En *Bezares* v. *González, Alcalde*, 84 D.P.R. 468, 477 (1962), estando ya en vigor la presente Ley Municipal, ante un problema parecido, dijimos lo siguiente:

"La ley no deja margen de duda alguno en cuanto al trámite para la destitución de los peticionarios. Tampoco distingue el

---

[1] En cuanto a la destitución de funcionarios ya la ley también exigía justa causa, previa formulación de cargos, en su Art. 44. 21 L.P.R.A. sec. 1263.

[2] También la Constitución, Art. II, sec. 1, dispone en parte que "No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas."

[3] Leyes, 1906, pág. 111.

artículo 93, al ofrecer su manto protector, entre empleados que hubiesen sido nombrados por la propia Administración que destituye y empleados nombrados por una Administración anterior." (Citas omitidas.)

Para una reiteración del mismo principio véase *Figueroa* v. *López, Alcalde,* 89 D.P.R. 474, 475 (1963). Y en *López, Alcalde* v. *Tribunal Superior,* 90 D.P.R. 304, 312 (1964), dijimos:

"Resumiendo . . . diremos que cuando un funcionario o empleado ocupa un cargo o empleo con término fijo de incumbencia, o indefinidamente, pero su separación, por mandato de ley, debe realizarse por 'causa', o por 'justa causa', la causa o la justa causa es causa legal o en derecho, no es el criterio o la sola apreciación del poder que destituye, por más aparentes o justificadas que a él le puedan parecer las razones que tenga para destituir. Secuela de ello, una destitución por causa o por justa causa debe estar precedida de una determinación de tipo legal o de naturaleza judicial en cuanto a la existencia o no de una causa o causa justa. Esto a la vez exige que la destitución esté precedida también por una audiencia dada al funcionario o empleado destituido, con oportunidad de ser oído en su defensa contra la separación."

■ Debemos disponer también del planteamiento hecho por el demandado en el sentido de que una solicitud de *mandamus* no es el vehículo adecuado para solicitar la reposición en el cargo o empleo luego de una destitución ilegal. El planteamiento carece de validez. El *mandamus* es un remedio adecuado para impedir que un funcionario o junta separe de su empleo a un funcionario o empleado, sin autoridad para ello. *Gil* v. *Chardón,* 41 D.P.R. 210, 218 (1930). Véanse además *Bezares* v. *González, Alcalde,* 84 D.P.R. 468 (1962); *Abella* v. *Piñero, Gobernador,* 66 D.P.R. 690 (1946); *Pérez Marchand* v. *Garrido, Comisionado,* 48 D.P.R. 457, 473 (1935); *Romero Moreno* v. *Gore, Gobernador,* 46 D.P.R. 408, 428 (1934). *Jiménez* v. *Reily, Gobernador,* 30 D.P.R. 626 (1922); *Sarriera* v. *Todd,* 26 D.P.R. 4 (1917); *Cintrón* v. *Berríos, Alcalde,* 24 D.P.R. 721 (1917).

Nuestra legislación, como la de tantos otros países que tienen sistemas de administración pública avanzados, o relativamente avanzados (Inglaterra, Estados Unidos, Alemania, Francia y otros), reconoce las ventajas del principio de selección por mérito de los servidores públicos.[4] Ya se entiende que en los sistemas democráticos el poder político se solicita y se obtiene para servir al país y no para servirse de él. Es generalmente reconocido que el antiguo y desacreditado sistema de botín (*spoils system*) "con cambios de arriba a abajo en todo el personal administrativo como resultado de cada elección puede considerarse práctica condenable, dañina y obsoleta."[5] Desde luego, también se reconoce, como parte del sistema democrático, que además de los cargos electivos, el personal superior del aparato administrativo del gobierno (jefes de los grandes departamentos de la rama ejecutiva; ayudantes y asesores del primer ejecutivo, etc.) aun cuando deben reunir capacidades técnicas satisfactorias no son designados exclusivamente en consideración a ellas sino que su designación sigue siendo discrecional y sobre la base de confianza política. Esto se entiende porque es necesario que entre ese personal superior de la estructura administrativa y las autoridades supremas elegidas por su-

[4] Para una excelente discusión sobre el desarrollo, teoría y práctica del servicio civil en el estado moderno, véase Finer, *Theory and Practice of Modern Government*, ed. rev. (1960), págs. 709 y ss. Para un magnífico resumen de la problemática de la administración pública moderna, véase Muñoz Amato, *Introducción a la Administración Pública* (1954), págs. 15-98. Véase también la ya clásica *Introducción al Estudio de la Administración Pública* del Profesor Leonard D. White (1964), especialmente sus capítulos 21 y 22. Esta traducción al español preparada por el gobierno de los Estados Unidos para los programas de cooperación técnica en los países de habla española es una traducción de la cuarta edición norteamericana de la obra titulada *Introduction to the Study of Public Administration* (1954).

[5] *La Nueva Constitución de Puerto Rico*, Informes a la Convención Constituyente, preparados por la Escuela de Administración Pública de la Universidad de Puerto Rico (1954) pág. 515. White, obra citada, pág. 320.

fragio popular haya compenetración en cuanto a los programas importantes de gobierno. Esto, desde luego, no es aplicable al personal subalterno permanente, que no formula política pública y que debe estar comprendido en el servicio civil o servicio de mérito.

Reconociendo la deseabilidad de extender en los niveles correspondientes el servicio de mérito la Asamblea Legislativa, mediante la Ley Núm. 2 de 22 de abril de 1959, autorizó a las corporaciones públicas del gobierno de Puerto Rico y a los municipios a incluir a su personal en el sistema de retiro de los empleados del gobierno de Puerto Rico siempre y cuando que los municipios que deseasen acogerse a esos beneficios estableciesen un sistema de mérito previamente acordado con el Director de Personal del gobierno de Puerto Rico. 3 L.P.R.A. sec. 782.

En vista de lo anterior *reconsideraremos nuestra decisión dictada en este caso en 21 de abril de 1970 y confirmaremos la sentencia dictada en el mismo por el Tribunal Superior, Sala de Bayamón, en 20 de febrero de 1963.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Santana Becerra no intervinieron.